Cecelia N. EAGLESTON, Plaintiff,

v.

COUNTY OF SUFFOLK,
et al., Defendants.

No. CV 89–4083.

United States District Court,
E.D. New York.

April 22, 1992.

Rebore, Thorp & Pisarello, P.C. by Bartholomew J. Rebore, Lindenhurst, N.Y., for plaintiff.

Robert J. Cimino, Suffolk County Atty. by Jeltje Dejong, Hauppauge, N.Y., for defendants.

WEXLER, District Judge.

Cecelia Eagleston ("plaintiff"), brings this suit under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 against the County of Suffolk, the Suffolk County Police Department, former Suffolk County Police Commissioner Dewitt C. Treder, current Suffolk County Police Commissioner Daniel Guido ("Guido"), Detective Rivera ("Rivera"), and Suffolk County Police Officers Brian K. Bugge ("Bugge"), Edward Kopf ("Kopf"), Paul Kern ("Kern"), Dennis Donnelly ("Donnelly"), Jack Ozer ("Ozer"), Michael Pesale ("Pesale"), Daniel Moore ("Moore"), M.P. Milward ("Milward") and James Rooney ("Rooney") (collectively, "defendants"). Plaintiff alleges that defendants violated her rights to equal protection of the law and equal privileges and immunities as guaranteed by the Fifth, Ninth and Fourteenth Amendments by their policy of refusing to arrest her husband, who, she alleges, continuously threatened her and attacked her in violation of two Orders of Protection.[1] Plaintiff also brings pendent state claims based on negligence.

Now before the Court is defendants' motion, pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, to dismiss the negligence cause of action and to dismiss all individually named police officers. For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

The following material facts are derived from plaintiff's Complaint and her Affirmation in Opposition to the instant motions.

On or about October 20, 1986, plaintiff commenced divorce proceedings against her husband, Thomas Eagleston, and he responded by throwing objects at her and by smashing plasterboard walls and breaking a door in the basement of their residence. Plaintiff called the Suffolk County Police and police officers went to the marital residence, interviewed plaintiff and her husband, and determined that there were no grounds on which to make an arrest.

Subsequently, plaintiff sought an Order of Protection against her husband, and on October 23, 1986, the Honorable William R. Geiler, a Suffolk County Supreme Court Judge, signed an Order to Show Cause, returnable on November 3, 1986, which included the following "temporary order of protection": "for good cause shown, pending the return date of this motion, let the defendant be ordered to refrain from any acts of violence towards the plaintiff or the infant Steven D. Eagleston."

On November 7, 9 and 20, 1986, plaintiff called the Suffolk County Police in response to alleged assaults, personal threats and/or destruction of her property by her husband. Her husband was not arrested.

On November 26, 1986, as a result of a contempt proceeding initiated by plaintiff which alleged violations of Judge Geiler's Order of October 23, 1986, the Honorable Judge Ralph Yachnin, a Nassau County Supreme Court Judge sitting by designation in Suffolk County, signed an Order providing that Judge Geiler's "temporary order of protection" be continued until December 8, 1986, or such further adjourned date as the Court may grant and providing plaintiff "exclusive use and occupancy of the marital residence, located at 210 Irving Street, Central Islip, New York."

Plaintiff alleges that on November 27, 1986, her husband began living in a room in the basement of the marital residence and that she saw him entering his sister's apartment, which was also located in that basement, on several occasions. Plaintiff further alleges that her husband's assaults, threats and destruction of her personal property continued, and specific incidents were reported to the Suffolk County police

---

**1.** Plaintiff does not explain, and this Court therefore does not address, the applicability of the Fifth and Ninth Amendments to the facts of this claim. It should also be noted that defen-

dants do not accept the validity of plaintiff's Orders of Protection. For the purposes of this motion, however, the Court will assume that the Orders were valid.

on December 7, 8, 9, 19 and 24, 1986. Plaintiff's husband was not arrested.

Tragically, on December 27, 1986, Thomas Eagleston entered the marital residence and stabbed plaintiff thirty-three times with a cutlery knife.

Plaintiff alleges that the failure of the police officer defendants to arrest her husband for the alleged violations of her Orders of Protection were intentional acts of discrimination against her as a woman, and/or as a complainant against her spouse, pursuant to an unofficial Suffolk County Police policy and in direct contravention to official Suffolk County Police Department policy as set forth in General Order No. 85–20, dated September 19, 1985, which states in relevant parts:

16.11.1 The presentation of a Family or Criminal Court Order of Protection to a Member of the Force by the petitioner constitutes authority to take the person named therein, (the respondent) into custody for an alleged violation of the terms stipulated thereon, the petitioner being the complainant. If probable cause exists that the respondent violated the terms of the Order of Protection, an arrest will be made. There will be no attempts to reconcile or mediate the situation.

. . . .

16/11.1B In a situation where the respondent is not at the scene, (although a respondent may be taken into custody at any place not necessarily at the scene of the alleged violation) the police officer will advise the petitioner of the following options, depending on which Order of Protection applies:

1. Family Court Order of Protection; the petitioner can respond to the Probation Intake Unit in Hauppauge and file a petition, violation of Order of Protection.
2. Criminal Court Order of Protection; the petitioner can respond to the precinct Crime Control Section and file a complaint in accordance with existing laws and procedures.

Plaintiff commenced the instant action on December 5, 1989.

## II. DISCUSSION

In response to defendants' motion for dismissal/summary judgment, plaintiff agrees that her pendent state claims should be dismissed. She also consents to the dismissal of defendants Guido and Rivera. Accordingly, plaintiff's state claim and all claims against Guido and Rivera are dismissed.

### A. *Statute of Limitations*

■ The parties agree that the instant action was commenced on December 5, 1989 and that a three-year statute of limitations is applicable. *See Owens v. O'Kure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). It is also undisputed that the claims against police officers Bugge, Kopf, Kern and Donnelly are based on incidents occurring more than three years prior to the commencement of this suit.

Plaintiff notes, however, that a § 1983 action does not accrue until a plaintiff knows or has reason to know that she has been injured, and knows or has reason to know who has inflicted the injury. *Mullinax v. McElhenney*, 817 F.2d 711, 716–17 (11th Cir.1987) (§ 1983 action could include claim based on prosecutors' attempts at entrapment which occurred beyond the statute of limitations period when plaintiff had no reason to suspect defendants until a date not barred by the statute). Plaintiff contends that she suffered her injury on December 27, 1986, when her husband repeatedly stabbed her, and that she could not have been aware of any injury due to the failure of police officers to arrest her husband prior to that date. This Court disagrees.

In *Singleton v. City of New York*, 632 F.2d 185 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), the plaintiff alleged a conspiracy to violate his civil rights and contended that the defendants' separate wrongs should be treated as a single transaction for accrual purposes. The Second Circuit, however, held to the contrary.

The crucial time for accrual purposes is when the plaintiff becomes aware that he

is suffering from a wrong for which damages may be recovered in a civil action. To permit him to wait and toll the running of the statute simply be asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

. . . .

Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent. This may occur, for instance, where a person contracts silicosis as the result of ingesting infinitesimally small amounts of coal dust of a period of years, or gradually becomes disabled as the result of operating a defective hammer. But no such claim is made here.

*Id.* at 192–93 (citations omitted); *see also Jones v. Coughlin,* 665 F.Supp. 1040, 1044 (S.D.N.Y.1987) (applying *Singleton* to §§ 1983 and 1985 claims by an inmate who alleged that prison officials harassed him over a period of several years); *cf. Mullinax,* 817 F.2d at 717 n. 4 (noting that the court did not address plaintiff's claim that defendants committed a "continuing tort").

In the instant case, plaintiff alleges that by failing to arrest her husband, each of the police officer defendants violated her constitutional rights to equal protection under the Fourteenth Amendment. Assuming that plaintiff's rights were violated in this way, this Court holds that the officers' allegedly improper failures to act were sufficient to enable plaintiff to realize that she had suffered a compensable injury at that time. Moreover, as plaintiff knew or could easily have discovered the identities of Officers Bugge, Kopf, Kern and Donnelly at the time she sought their assistance, her cause of action against them accrued as of that time, not at the later date when she was physically injured by her estranged husband. Accordingly, plaintiff fails to satisfy the statute of limitations as to defendants Bugge, Kopf, Kern and Donnelly, and they are therefore dismissed.

## B. *Failure to State a Cause of Action*

### 1. Officer Rooney

■ The only reference in plaintiff's Complaint to Officer Rooney is that he arrived at plaintiff's house on December 27, 1986, after her husband had attacked her, and that Officer Rooney was not able to arrest her husband because he had already fled. Clearly, this does not state a cause of action. Accordingly, defendants' motion to dismiss this action as to Officer Rooney is granted.

### 2. *Officer Moore*

■ According to the Complaint, on December 7, 1986, plaintiff called the police, complaining that her husband was violating her Order of Protection. Officer Moore responded, concluded that there was no violation of the Order of Protection, made no investigation and left. However, in her deposition testimony, plaintiff states that this event actually took place two days later, on December 9, 1986, and that she does not remember what prompted the call or whether her husband was on the premises.

Similarly, in his deposition testimony, Officer Moore states that he has no independent recollection of the events involving plaintiff and his testimony is based on his field report, dated December 9, 1986. He does not recall, and his report does not indicate, the basis of plaintiff's belief that her Order of Protection was violated. The report does state that after speaking with plaintiff at her home, he and his partner searched the premises, including the basement, for her husband but did not find him. He concluded that her Order of Protection was not violated.

Where both parties have testified that they have no independent recollection of the material facts and the official report indicates that the defendant police officer participated in a search of plaintiff's premises before concluding that there was no violation of her Order of Protection, plaintiff has failed to state a cause of action. Furthermore, even assuming *arguendo,* that plaintiff can state a cause of action

against Officer Moore, under these facts he would be entitled to qualified immunity. *See infra.* Accordingly, defendants' motion to dismiss this action as to Officer Moore is granted.

### C. *Qualified Immunity*

■ Qualified immunity shields governmental officials performing discretionary functions from civil liability if the conduct complained of "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether an official is protected by qualified immunity is determined by the objective reasonableness of the action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citation omitted); *Washington Square Post No. 1212 American Legion v. Maduro,* 907 F.2d 1288, 1291 (2d Cir.1990).

Qualified immunity is not only a defense to liability, but also a "protection against having to defend a lawsuit." *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990); *Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). Moreover, "[t]he Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense." *Cartier v. Lussier,* 955 F.2d 841 (2d Cir. 1992) (citing *Harlow,* 457 U.S. at 815–16, 102 S.Ct. at 2736–37).

Defendants contend that although Police Officers Pesale, Milward and Ozer did not arrest plaintiff's husband in response to her complaints, their actions were objectively reasonable under the facts and law at the time of those decisions, and they are therefore entitled to summary judgment on the basis of qualified immunity. *See Hynson v. City of Chester Legal Dept.,* 864 F.2d 1026, 1032 (3rd Cir.1988) ("a police officer loses a qualified immunity to a claim that a facially neutral policy is executed in a discriminatory manner only if a reasonable police officer would know that the policy has a discriminatory impact on women, that bias against women was a motivating factor behind the adoption of the policy, and that there is no important public interest served by the adoption of the policy").

Plaintiff responds that although Suffolk County Police Department may have a facially neutral policy as to arresting men who harass or assault their wives, the defendant police officers—pursuant to an unofficial policy—intentionally discriminated against her as a woman and/or because she was in a domestic relationship. Plaintiff, relying on *Mody v. City of Hoboken,* 758 F.Supp. 1027, 1033 (D.N.J.1991), contends that defendants are not entitled to a qualified immunity defense because she has alleged that they intentionally discriminated against her. *See also Gutierrez v. Mun. Ct. of S.E. Judicial Dist.,* 838 F.2d 1031, 1051 (9th Cir.1988), *cert. granted and judgment vacated as moot,* 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989); *Goodwin v. Circuit Court of St. Louis County,* 729 F.2d 541, 546 (8th Cir.1984), *cert. denied, sub. nom., Corrigan v. Goodwin,* 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984).

Unfortunately, plaintiff fails to cite *Rodriguez v. Board of Educ. of Eastchester Union Free School Dist.,* 620 F.2d 362, 366–67 (2d Cir.1980), in which the Second Circuit held that qualified immunity *does* apply in a § 1983 action alleging intentional sex discrimination. Of course, of the above cited cases, only *Rodriguez* is binding on this Court. Consequently, this Court will examine the claims by defendant police officers for qualified immunity.

### 1. *Officer Ozer*

■ According to plaintiff's complaint and deposition, on December 7, 1986, plaintiff called the Suffolk County Police because she heard her husband in his sister's basement apartment, he was harassing her, and she was frightened and wanted him arrested. Officer Ozer responded to the call. According to plaintiff's deposition, Officer Ozer spoke to her and then went down to the basement. When he came

upstairs again he told plaintiff that he spoke to her sister-in-law and she told him that plaintiff's husband was not in her apartment. Officer Ozer then explained to plaintiff that he could not enter the basement apartment to search for her husband unless invited in by the tenant.

According to Officer Ozer's deposition, he met plaintiff on the front lawn. She showed him her Order of Protection which stated that she was to have "exclusive use and occupancy of the marital residence," and sought her husband's arrest. Her husband then came onto the front lawn and, responding to Officer Ozer's questions, he explained that he lived in the downstairs apartment and paid rent. Plaintiff agreed that he lived there and Officer Ozer determined that he could not make an arrest under those circumstances.

Under plaintiff's version of these events, this Court finds that Officer Ozer made a reasonable investigation regarding Thomas Eagleston's presence in the basement apartment, but was unable to proceed further because he was told by the tenant that Thomas Eagleston was not there and he had no warrant to search for him in the rented basement apartment.

Under Officer Ozer's version of these events, this Court finds that it was objectively reasonable for him to conclude that Thomas Eagleston was not in violation of plaintiff's Order of Protection because her husband had not harmed her, there was no evidence that he had threatened her, and he was apparently renting a room in the basement of the house. Moreover, it was objectively reasonable for Officer Ozer to conclude that the term "exclusive use and occupancy of the marital residence" in plaintiff's Order of Protection did not apply to a separate, income-producing basement apartment. Accordingly, this Court finds that under either version, Officer Ozer's failure to arrest Thomas Eagleston on December 7, 1986 was objectively reasonable and he is therefore entitled to qualified immunity.

2. *Officer Pesale*

According to plaintiff's complaint, on December 8, 1986, Thomas Eagleston threatened her and then attempted to run her over with his car, driving it up onto the front lawn of a neighbor's house. When Officer Pesale responded to her call, she advised him of her Order of Protection and sought her husband's arrest. However, Officer Pesale refused to look for her husband in the basement apartment.

Plaintiff's deposition testimony as to these events differs significantly. In that version, plaintiff states that she reported this incident at the precinct; that her son, Steven, informed the police that his father was living in the basement; and that she is not certain as to whether or not the police went to the basement apartment to try to find her husband.

Officer Pesale's version of these events is in sharp contrast to both of plaintiff's versions. Officer Pesale states that he responded to a radio call, spoke to plaintiff, attempted, unsuccessfully, to locate her husband in the basement apartment, and advised plaintiff to contact the Crime Control Unit if she wished to have her husband arrested.

Rule 56(c) of the Federal Rules of Civil Procedure provides "that summary judgment shall be rendered only when a review of the entire record demonstrates that there is no genuine issue as to any material fact." Moreover, "factual allegations backed by affidavits or other evidence made by the party opposing the motion are regarded as true and are viewed in the light most favorable to the non-movant." *Cartier*, 955 F.2d at 846 (citations omitted).

This Court finds that under plaintiff's version(s) of the events of December 8, 1986, as viewed in the light most favorable to her, it was not objectively reasonable for Officer Pesale to refuse to go to the basement apartment to investigate as to whether her husband was there. Accordingly, Officer Pesale is not entitled to qualified immunity at this time.

3. *Officer Milward*

According to plaintiff's complaint and deposition, on the evening of December 24,

422

1986, she called the Suffolk County Police because she had received numerous telephone threats from her husband and because a rock was thrown through the window in the front room of the marital home. When Officer Milward responded, she advised him that she had an Order of Protection and that she sought her husband's arrest. She also advised him that she had called the police earlier in the day due to other threatening phone calls from her husband and another rock which had been thrown through a window in the house. Furthermore, she stated that she was certain that her husband was in the basement apartment. Officer Milward asked her if she saw her husband throw the rock and she said that she did not. Officer Milward (like the officers who responded to plaintiff's earlier call that day) made a note of plaintiff's belief that her husband was in the basement, but refused to go downstairs to investigate.

In his deposition, Officer Milward states that he has no independent recollection of the events of December 24, 1986, and his testimony is based on the report that he made at that time. According to that report, Officer Milward spoke to plaintiff and ascertained that the broken window could be related to a marital dispute. He does not recall being advised of plaintiff's Order of Protection or of any other incidents regarding Thomas Eagleston. He states that he did not search the premises for plaintiff's husband because he came to investigate a report of criminal mischief and he lacked probable cause. He filed his report with the Crime Control Unit for follow-up.

This Court finds that under the above-described circumstances, it was not objectively reasonable for Officer Milward to have refused to go down to the basement apartment to further investigate plaintiff's allegations. Admittedly, it is unlikely that such an action would have led to Thomas Eagleston's arrest for violation of his wife's Order of Protection. However, read broadly, plaintiff's Complaint alleges not only that defendants failed to arrest her husband, but also that they failed to properly investigate her allegations against

him. Accordingly, Officer Milward is not entitled to qualified immunity at this time.

### III. CONCLUSION

For the aforementioned reasons the pendant state action is dismissed and plaintiff's action is dismissed as to Guido. Defendants' motion for dismissal/summary judgment pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure is granted as to defendants Rivera, Bugge, Kopf, Kern, Donnelly, Ozer, Moore and Rooney. The motion is denied at this time as to defendants Pesale and Milward.

SO ORDERED.