**PUEBLO NEIGHBORHOOD HEALTH CENTERS, INC., et al., and Oliver P. Pacheco, et al., Plaintiffs-Appellees,**

v.

**Joseph E. LOSAVIO, Jr., et al., Defendants–Appellants.**

**Nos. 86–1171, 86–1172.**

United States Court of Appeals, Tenth Circuit.

May 24, 1988.

Nancy E. Rice (Robert N. Miller, U.S. Atty., with her on the briefs), Asst. U.S. Atty., for defendants-appellants.

Russell Olin (Montie L. Barringer, Pueblo, Colo., and Judith Firestone, of Pueblo County Legal Services, Inc., Pueblo, Colo., with him on the briefs), Beulah, Colo., for plaintiff-appellee, Oliver P. Pacheco.

Kenneth A. Padilla, Denver, Colo., for plaintiff-appellee, Pueblo Neighborhood Health Centers, Inc.

Before MOORE, BARRETT and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from the district court's denial of the defendants' motions for summary judgment. The defendants sought summary judgment on qualified immunity grounds. Because the district court improperly applied the standards for determining the availability of qualified immunity, we reverse.

## I.

The two lawsuits before the court arise from the seizure, inspection, copying, and retention of medical records from two facilities operated by Pueblo Neighborhood Health Centers, Inc. (PNHC) in Pueblo, Colorado. The plaintiffs in the first of these cases, *Pueblo Neighborhood Health Centers v. Losavio*, No. 86-1171 (*Pueblo*), are the PNHC, its executive director (Dr. Richard Rivera), and several patients whose medical records were kept at the PNHC facilities. The plaintiffs in the second suit, *Pacheco v. Losavio*, No. 86-1172

(*Pacheco*), are another group of such patients.[1] Only the federal defendants—Steven Munsinger who was Assistant United States Attorney for the District of Colorado, and some employees of the Office of Program Integrity of the United States Department of Health and Human Services (HHS) (formerly the Department of Health, Education, and Welfare)—remain in the suit.

In April 1978, Joseph Losavio, then a state district attorney, contacted Robert Griffin, Director of Investigation in the HHS Office of the Inspector General, and requested technical assistance from some of Griffin's employees in the HHS's Program Integrity Section. Losavio indicated he had probable cause to believe that the PNHC was involved in Medicaid fraud and he would obtain a warrant to search the PNHC facilities. He said that he needed the HHS employees to supply and operate microfilm equipment during the search.

Griffin conveyed this request to Assistant United States Attorney Stephen Munsinger who advised him to deny Losavio's request because Munsinger believed the assistance Losavio needed was available from state sources. After Losavio subsequently informed Munsinger that no such assistance was available from the state and no search would be initiated without a warrant, Munsinger called Griffin and advised him that he should treat Losavio's request as he would any request for assistance from a state law enforcement agency.

On April 15 and 16, 1978, Losavio, other state officials, and the HHS employees named as defendants here, entered two PNHC facilities and conducted searches and seizures pursuant to warrants issued by a Pueblo County judge on affidavits Losavio obtained. Medical records concerning the patient-plaintiffs and others were inspected and microfilmed. The HHS employees, who according to the district court provided only technical assistance in the search, took the microfilm to Denver and had it developed pursuant to a contract between HHS and a private film processing company. The HHS employees later delivered the processed film to Losavio. At the time of the PNHC search, Losavio was the subject of a well-publicized recall campaign; one of his most vocal critics was Dr. Rivera.

In *Pacheco,* the plaintiffs seek relief under the *Bivens*[2] doctrine and 42 U.S.C. § 1983, alleging that the defendants violated their constitutionally guaranteed right to privacy. In *Pueblo,* plaintiffs allege that the defendants acted under color of state law to abridge their first, fourth, fifth, and fourteenth amendment rights in violation of 42 U.S.C. § 1983. They also allege violations of 42 U.S.C. §§ 1981, 1985(3), and 1986, and they seek relief for the alleged constitutional violations under the *Bivens* doctrine. The defendants sought summary judgment in each case on qualified immunity grounds. The trial court denied the motions and defendants appeal.

## II.

■ We first address whether the district court's denial of the defendants' motions for summary judgment on qualified immunity grounds constitutes an appealable decision within the meaning of 28 U.S.C. § 1291. We hold that it does. The entitlement to qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (emphasis original). Because they claim a right not to stand trial, the defendants may immediately appeal the failure of the district court to grant summary judgment or

---

**1.** The two cases were consolidated for trial purposes, but before trial separate motions for summary judgment were submitted to the district court. The court denied both motions in a single order. We review the denial of both motions here.

**2.** *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Under the *Bivens* doctrine, federal employees can be liable for damages stemming from violations of constitutional rights.

dismissal. *Lynch v. Cannatella,* 810 F.2d 1363, 1375 (5th Cir.1987).

An assertion of qualified immunity is properly evaluated under the standard enunciated by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Before *Harlow,* qualified immunity contained both an objective and a subjective component. *Id.* at 815, 102 S.Ct. at 2736. Because of its subjective component, qualified immunity was often ineffective in resolving insubstantial suits against government officials before trial. *Id.* at 815–16, 102 S.Ct. at 2736–37. In an attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interference in the performance of their duties as a result of baseless claims, the Court adopted an objective test to determine whether the doctrine of qualified immunity applies. When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738; *accord Wolfenbarger v. Williams,* 826 F.2d 930, 932 (10th Cir.1987). In deciding whether the law that the defendant allegedly violated was clearly established, the court will examine the law as it was at the time of the defendant's actions. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Wolfenbarger,* 826 F.2d at 932–33.

The plaintiff carries the burden of convincing the court that the law was clearly established. *Lutz v. Weld County School Dist.,* 784 F.2d 340, 342–43 (10th Cir.1986). In meeting its burden under *Lutz,* a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. *See Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039 n. 2, 97 L.Ed.2d 523 (1987). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* 107 S.Ct. at 3039; *see also Garrett v. Rader,* 831 F.2d 202,

204 (10th Cir.1987) (whether law is clearly established "should be determined in a particularized sense").

The question before this court, then, is whether reasonable HHS officials could have believed that the technical assistance they provided in the search of PNHC conducted pursuant to a warrant was lawful in light of clearly established law. If so, then the defendants are entitled to qualified immunity. *See Anderson,* 107 S.Ct. at 3040.

The district court recognized that it was to apply the *Harlow* standard and found that the plaintiffs in these cases "are unable to cite controlling precedent" demonstrating that a reasonable person in the position of these defendants would know that their participation in the Losavio search would violate the rights asserted here. The court went on to state, however, that "the defendants are, likewise, unable to show that such conduct is *not* a deprivation of the protections of the constitution and federal law." (Emphasis added.) The court concluded therefore that summary judgment was inappropriate. The district court applied the wrong standard in resolving the qualified immunity issue. Because the law in this area has evolved significantly in recent years, we find it useful to set out the proper approach.

While qualified immunity is an affirmative defense, *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), it cannot be analogized to other affirmative defenses because of the interests implicated in suits against governmental officials. Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. Furthermore, this court has recognized that qualified immunity is a defense of a different character by allowing appeals from interlocutory orders denying qualified immunity based summary judgment motions. *See DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 844 F.2d 714 (10th Cir.1988).

Because the defendant's status as a governmental official or "agent" is an essen-

tial element of a section 1983 or *Bivens* claim, the potential applicability of the qualified immunity defense will usually appear in the complaint. *See Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987). The complaint should include "all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* at 676. Thus, a defendant could, prior to filing an affirmative defense, challenge the complaint under Fed. R.Civ.P. 12(b)(6) on the ground that he or she is entitled to qualified immunity because the pleaded facts failed to show that his or her conduct violated clearly established law of which a reasonable person would have known. Similarly, the defendant could raise the immunity issue in a motion for summary judgment. In either case, once the defense has been raised, the court must allow the plaintiff the limited opportunity allowed in Fed.R.Civ.P. 12(b)(6) and 56 to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *See Dominque,* 831 F.2d at 677. Unless such a showing is made, the defendant prevails. If the plaintiff has identified the clearly established law and the conduct that violated the law, the defendant as the movant in a motion for summary judgment bears the normal burden of showing that no material issues of fact remain that would defeat his or her claim of qualified immunity.

The question for the trial court to resolve is a legal one; the court cannot avoid the question by framing it as a factual issue. *Id.* The court's decision should identify the law upon which it relied and state the basis for its conclusion. *Id.* Because the doctrine of qualified immunity represents a balance that has been struck between competing values, *Harlow,* 457 U.S. at 813–15, 102 S.Ct. at 2735–37,

> the trial judge is burdened with a responsibility at an early stage, to make determinations of law based upon what the clearly established law governing the case was at the time of the challenged acts. Once the issue of qualified immu-

nity is properly injected in the case, either by a motion to dismiss, an affirmative defense, or a motion for summary judgment, the plaintiff is obliged to present facts which if true would constitute a violation of clearly established law.

*Dominque,* 831 F.2d at 677. We now proceed to examine the cases before us in light of the approach we have just articulated.

### III.

■ In *Pacheco,* the plaintiffs claim that the search and seizure of PNHC medical records violated their right to privacy. Thus, we must examine whether the privacy rights allegedly violated by defendants were clearly established when the defendants acted. We agree with the district court that "the scope of privacy protection under the United States Constitution was anything but clear" in April 1978. *See* L. Tribe, *American Constitutional Law* § 15.1 at 886–89 (1978).

The cases characterized as protecting privacy have involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters (disclosural privacy), and another involves independence in making certain kinds of important decisions (autonomal privacy). *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–77, 51 L.Ed.2d 64 (1977). The patient-plaintiffs here appear to have based their claim on disclosural privacy rather than on its autonomal counterpart. As the district court correctly noted, however, "plaintiffs are unable to cite to any controlling precedent" that demonstrates that defendants' actions have encroached upon a clearly established privacy zone.

When the defendants acted in 1978, *Whalen* was the "most comprehensive attempt ... to define the constitutional right of privacy." L. Tribe, *American Constitutional Law* § 15.1 at 886 (1978). In *Whalen,* the Court upheld a New York statutory scheme that required computerized recordkeeping of prescriptions for certain dangerous but lawful drugs even though those records revealed patients' identities. In ad-

dressing the claim that disclosure of private information to authorized state employees violated a privacy right, the Court stated that such disclosures are not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *Whalen*, 429 U.S. at 602, 97 S.Ct. at 878. Such disclosures do not automatically violate the right to privacy. *Id.* Thus, there was, at the relevant time, no right to privacy so clearly established that a reasonable person would have known that his or her participation in the search and seizure of PNHC medical records would violate that right. It was reasonable for government officials to conclude that the disclosure involved in the present case cannot be distinguished from the "host of other unpleasant invasions" that occur in the delivery of health care services.

Plaintiffs' attempts, in the alternative, to base their privacy claim on defendants' alleged failure to follow internal HHS administrative procedures regarding assistance to state law enforcement officials are unavailing. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some ... administrative provision." *Davis*, 468 U.S. at 194, 104 S.Ct. at 3019. Summary judgment should have been granted in *Pacheco*, and we reverse the district court's determination in that case.

## IV.

■ In *Pueblo*, the plaintiffs contend that the federal defendants conspired with state officials and acted under color of state law to abridge various constitutional rights when they participated in the search and seizure of PNHC records.[3] They first allege that the search and seizure was unreasonable under the fourth and fifth amendments. These claims can be readily evaluated under the *Harlow* standard.

It is clearly established that persons may be neither subjected to unreasonable searches and seizures nor denied liberty or property without due process of law. It was reasonable for these defendants to believe that the PNHC search and record seizure was lawful because they were told by law enforcement officials that a valid search warrant would be obtained. If the search was unlawful under the fourth and fifth amendments, it was not such that it would be apparent to reasonable officials in the position of the defendants in this case. Therefore, qualified immunity shields these defendants from plaintiffs' fourth and fifth amendment claims.

The other claims asserted in *Pueblo* are more difficult to resolve under the *Harlow* standard. Plaintiffs in this case contend that the federal defendants conspired with state officials to conduct the search for the purpose of interfering with their exercise of first amendment speech and associational rights. They also allege that defendants were motivated by racial animus. For claims of this type, the governmental actor's intent, motive, or purpose is the critical element. For this reason, plaintiffs contend *Harlow* should not apply to foreclose their opportunity to prove at trial the factual matter of defendants' improper motive. The defendants argue conversely that, under the qualified immunity inquiry mandated by *Harlow* and its progeny, such subjective elements are eliminated from consideration. Therefore, we must deter-

---

3. Specifically, plaintiffs allege that their first, fourth, fifth, and fourteenth amendment rights were abridged under color of state law in violation of 42 U.S.C. § 1983 and § 1985(3). Additionally they press claims under the *Bivens* doctrine for violations of those same constitutional provisions. Moreover, the plaintiffs contend that defendants' actions were motivated by racial animus and denied plaintiffs the full and equal benefit of the laws and security of person and property in violation of 42 U.S.C. § 1981. Finally, the *Rivera* plaintiffs allege that the defendants knew that the violations were about to occur, had the power to prevent them, and negligently failed to do so in violation of 42 U.S.C. § 1986.

The qualified immunity analysis is the same whether the claims are brought under the *Bivens* doctrine or pursuant to the post-Civil War Civil Rights Acts. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978) ("[W]e deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.").

mine the standards applicable to the qualified immunity question when improper motivation is alleged.

Under the *Harlow* standard, the focus is on the "objective reasonableness" of the defendant's conduct "as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. A problem arises in applying this standard where the "clearly established law" contains a subjective element such as motive or intent because the "clearly established law" component and the "objective reasonableness" component are at odds with each other. *Martin v. District of Columbia Metro. Police Dep't*, 812 F.2d 1425, 1432 (D.C.Cir.1987).[4]

The Supreme Court has yet to state how the *Harlow* standard should be applied when the governmental actor's intent is the critical element of the plaintiff's underlying substantive claim. *Gutierrez v. Mun. Court*, 838 F.2d 1031, 1050 n. 25 (9th Cir. 1988). Circuit courts that have addressed the question have concluded that *Harlow* does not exclude consideration of such factors when they are elements in the plaintiff's substantive claim.

■ For example, the District of Columbia Circuit recognized this problem in *Hobson v. Wilson*, 737 F.2d 1 (D.C.Cir.1984), and it implicitly determined that *Harlow* does not preclude evaluation of such factors in cases where they are elements in a plaintiff's underlying claim. *Id.* at 26–29. That court addressed the question more squarely in *Martin*. The *Martin* court reasoned that because an interpretation of *Harlow* that excluded all inquiry into motivation would insulate officials from liability whenever the substantive law makes the official's state of mind an essential component of the alleged constitutional violation, the Supreme Court could not have intended *Harlow* to reach so far. *Martin*, 812 F.2d at 1433. Other courts addressing this issue have reached similar conclusions. *See, e.g., Gutierrez*, 838 F.2d at 1050 (relying on

*Martin*); *Kenyatta v. Moore*, 744 F.2d 1179, 1185 (5th Cir.1984) (*Harlow* "did not entirely eliminate subjective inquiry from every qualified immunity analysis"), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2141, 85 L.Ed.2d 498 (1985); *Musso v. Hourigan*, 836 F.2d 737, 743 (2d Cir.1988) ("*Harlow* does not require us ... to ignore the fact that intent is an element of the relevant cause of action."). We agree with the rationale expressed in these cases and find that *Harlow* does not preclude inquiry into subjective factors when the applicable substantive law makes the official's state of mind an essential element of plaintiff's claim. However, when state of mind is not an essential element of the claim, *Harlow* rules out subjective inquiry. *Martin*, 812 F.2d at 1433 n. 18.

Plaintiffs in this case cannot succeed on their first amendment and racial animus claims unless they prove that the defendants acted with improper motive. Because the officials' state of mind is an essential element of these claims, the wholly objective inquiry suggested by *Harlow* is inappropriate here. Like the District of Columbia Circuit, however, we recognize that in allowing plaintiffs to present claims that depend upon proof of unconstitutional motive, we must insure that we do not render it impossible to dispose of groundless claims at the summary judgment stage thereby reimposing the burden *Harlow* sought to prevent. *See Hobson*, 737 F.2d at 29. Therefore, we must attempt to "strike a fair balance between 1) the 'need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority,' and 2) the countervailing need to provide a 'realistic avenue for vindication of constitutional guarantees.'" *Martin*, 812 F.2d at 1433 (quoting *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). We must consider how best to strike that balance in cases such as this in which government officials have sought

---

**4.** The District of Columbia Circuit initially granted rehearing en banc and vacated part IV of the *Martin* opinion, *Martin v. D.C. Metro. Police Dep't*, 817 F.2d 144 (D.C.Cir.1987), but has since reconsidered that decision, denied the en banc petition and reinstated part IV of the opinion, *Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240 (D.C.Cir.1987).

summary judgment on qualified immunity grounds.

The Supreme Court has made clear in summary judgment cases that the moving party has no burden to disprove unsupported claims of his opponent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 1); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Application of this rule is even more important "when, as in the area of concern in this case, the reasons for swiftly terminating insubstantial lawsuits are particularly strong." *Martin*, 812 F.2d at 1434. Thus, plaintiffs cannot rely on conclusory allegations; they must produce some specific factual support for their claim of unconstitutional motive. *Martin*, 812 F.2d at 1434; *see also Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985) (discussing motion to dismiss); *Hobson*, 737 F.2d at 30 (discussing motion to dismiss).

■ In their motion for summary judgment, the defendants in this case have produced enough evidence to require the plaintiffs to demonstrate that summary judgment is inappropriate. The materials defendants put forward in support of their motion for summary judgment indicate that their participation in the events leading to this lawsuit were objectively reasonable. According to affidavits submitted by the defendants, Munsinger advised the HHS defendants to respond to Losavio's request for assistance as they would any other from a state law enforcement official. Furthermore, the HHS defendants provided only technical assistance in a search conducted pursuant to a warrant.

In response to the defendants' summary judgment motion, the plaintiffs appear to rely principally on the following allegations in their first amended complaint:

22. That on or about April of 1978, all of the Defendants herein did conspire for the purpose of depriving the Plaintiffs of the equal protection of the laws and equal privileges and immunities under the law, and one or more Defendants did perform overt acts in pursuance of said conspiracy, as specified hereafter.

23. Said conspiracy was directed at each Plaintiff, individually, and at the Plaintiffs as a class, because of their race, and/or color, national origin, and because of their political beliefs and associations.

These fact recitations profferred in opposition to a summary judgment motion are insufficiently probative of alleged unconstitutional motive to warrant denial of the federal defendants' summary judgment motion.

Even if these statements could be construed to allow a plaintiff to remain in court in an ordinary case, they will not be adequate in a case of this type. *Martin*, 812 F.2d at 1435. We agree with the *Martin* court that "[t]he Supreme Court's 'strong condemnation of insubstantial suits against government officials' impels the application of a standard more demanding of plaintiffs when public officer defendants move for summary judgment on the basis of their qualified immunity." *Id.* (quoting *Krohn v. United States*, 742 F.2d 24, 31 (1st Cir.1984)). Where the defendant's subjective intent is an element of the plaintiff's claim and the defendant has moved for summary judgment based on a showing of the objective reasonableness of his actions, the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were improperly motivated.[5] In some instances only the pleadings are examined, *see Hobson*, 737 F.2d 1, 29–30 (D.C.Cir.1984) (heightened pleading standard required to proceed to discovery), while in others, such as the present case, the information that is developed by discovery before the motion is made should

---

5. This court has imposed an analogous burden on antitrust conspiracy plaintiffs. *See, e.g., Bright v. Moss Ambulance Serv., Inc.*, 824 F.2d 819, 824 n. 6 (10th Cir.1987) (mere conclusory allegations do not establish an issue of fact under Fed.R.Civ.P. 56); *Instructional Sys. Dev.* *Corp. v. Aetna Casualty & Sur. Co.*, 817 F.2d 639, 644 (10th Cir.1987) ("Allegations ... must be supported by *significant probative evidence* in order to overcome a motion for summary judgment.") (emphasis added).

**650**

also be considered, *DeVargas Co., Inc.*, 844 F.2d at 719 (10th Cir.1988).

Those courts that have adopted a heightened pleading standard for cases of this type have recognized that the federal rules are liberal and that plaintiffs often plead generally and discover the precise factual basis for their claim through liberal discovery processes. *See, e.g., Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5th Cir.1985). Nonetheless, they have concluded that, in the context of claims against public officials for actions undertaken in their official capacities, "liberal notions of notice pleading must ultimately give way to immunity doctrines that protect us from having the work of our public officials chilled or disrupted by participation in the trial *or* the pretrial development of civil lawsuits." *Id.* (emphasis original); *see also Hobson,* 737 F.2d at 30–31. Similarly, plaintiffs should not be allowed to overcome a properly submitted motion for summary judgment based on qualified immunity grounds without more than conclusory and nonspecific allegations.

Because the standard we apply today had not been announced when the district court denied the defendants' motion in this case, we refrain from ordering immediate entry of summary judgment for the federal defendants. We remand this case to the district court for the limited purpose of determining whether there was any specific, nonconclusory evidence before the court at the time the summary judgment motion was made that is sufficient to support plaintiffs' claim that the defendants acted with an unconstitutional motive.

We reverse the district court's denial of summary judgment in *Pacheco* and remand *Pueblo* to the district court for the limited purpose of making the determination on the summary judgment motion according to the standard set forth in this opinion.