**Steve SANCHEZ and Donald Sandoval, Plaintiffs,**

v.

**Gilbert SANCHEZ, Allen Jahner and Wilton Rogers, Defendants.**

No. CIV 87–1258 JC.

United States District Court, D. New Mexico.

Nov. 8, 1991.

James A. Burke, Santa Fe, N.M., for plaintiffs.

John L. Lenssen, Lenssen & Mandel, Santa Fe, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

CONWAY, District Judge.

THIS MATTER came on for consideration of the defendants' Motion for Judgment Notwithstanding the Verdict, or, In the Alternative, For a New Trial, filed February 11, 1991. The Court has reviewed the memoranda submitted by the parties and the relevant authorities. The Court has further examined those sections of the file pertinent to the issues presented, the proposed instructions of both the plaintiffs and defendants, the objections to the instructions after submission of the case to

the jury and the special verdict form as answered by the jury. After a great deal of reflection, I find that the motion is not well-taken and will be denied.

Plaintiffs Sanchez and Sandoval are former employees of New Mexico Highlands University. At the time of their discharges, plaintiffs had been employed at Highlands University for approximately 15 years and 17 years respectively. In addition to their jobs as locksmith and purchasing agent, the plaintiffs also served as coaches of the University wrestling team.

Defendants Sanchez and Jahner are the University President and Vice–President respectively. When the plaintiffs were terminated in 1987, defendant Rogers held the position of Personnel Director. The defendant University officials claim that the terminations of plaintiffs were due solely to the reorganization of the University and its elimination of the wrestling program.

After an eight-day trial on the merits, the jury found that the defendants had discharged both plaintiffs because they had circulated a petition critical of the Highlands University administration. These retaliatory actions were found to be violations under Section 1983 of the plaintiffs' constitutional rights to freedom of speech. Further, on the special verdict form the jury indicated that the defendants had conspired to violate the plaintiffs' constitutional rights and that their rights to procedural and substantive due process were also infringed.

The jury awarded awarded compensatory and punitive damages in the following amounts:

| Defendant | Plaintiff Sanchez | | Plaintiff Sandoval | |
| --- | --- | --- | --- | --- |
| | Compensatory | Punitives | Compensatory | Punitives |
| Sanchez | $6,750 | $90,000 | $74,695 | $90,000 |
| Jahner | 6,750 | 90,000 | 74,695 | 90,000 |
| Rogers | 1,500 | 20,000 | 16,599 | 20,000 |

■ Entry of a J.N.O.V. is appropriate "only when the evidence points but one way and is susceptible of no reasonable inferences which may sustain the position against whom the motion is made." *EEOC v. Prudential Federal Savings & Loan Ass'n.*, 763 F.2d 1166, 1171 (10th Cir.1985). In order to grant a new trial, however, the Court must find that the verdict is against the weight of the evidence, that the damages are excessive or that the moving party did not receive a fair trial. *See Brown v. McGraw–Edison Co.*, 736 F.2d 609 (10th Cir.1984). Because I find that the instructions to the jury adequately set forth the correct law to be applied and that the jury's decision is supported by substantial evidence, this Court will not disturb the verdict.

The motion sets forth thirteen assertions of error in the case. Defendants maintain that the refusal by the Court to instruct the jury regarding qualified immunity is the most significant of the alleged errors.

Defendants' brief at 2–3. As shown in Section I of this opinion, the defendants are confused on the qualified immunity issue in part because of the guidance the Tenth Circuit has provided to the lower courts. Section II addresses the other alleged errors.

I. Qualified Immunity

Like the indomitable Terminator in the movie of that name, the question of the defendants' entitlement to qualified immunity will not be put to rest. The defendants initially raised this issue on a motion for summary judgment which the Court denied, finding that questions concerning the defendants' motives precluded a finding of qualified immunity. The defendants took an interlocutory appeal from this Order to the Tenth Circuit Court of Appeals. In an unpublished per curiam decision, the panel affirmed this court's denial of qualified immunity, stating:

It is axiomatic that the university officials must be held to the knowledge that

employees of the university could not be terminated in retaliation for exercise of speech protected by the first amendment....

The university officials base their defense of qualified immunity on their position that, since their actions with regard to plaintiffs' employment in the summer of 1987 were not in retaliation for the circulation of the petition, the actions were objectively reasonable.

After a complete review of the record on appeal, we agree with the district court. There are material issues of fact vigorously disputed and documented by competent pretrial evidence to support both parties' contentions. "[W]hen all inferences from the evidence are drawn in the plaintiff[s'] favor, plaintiff[s have] raised a genuine issue of material fact as to whether [their] exercise of protected First Amendment activity was a substantial or motivating factor in her termination." *Laidley v. McClain*, 914 F.2d 1386, 1392 (10th Cir.1990) (citing *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274 [97 S.Ct. 568, 50 L.Ed.2d 471] (1977)). Under the circumstances of this case, summary judgment must be denied, and the matter must proceed in the district court.

*Sanchez & Sandoval v. Sanchez, Jahner & Rogers*, No. 89–2214, slip op. at 6–7 (10th Cir. October 19, 1990).

Prior to trial the defendants submitted a proposed jury instruction addressing the issue of qualified immunity; at trial, they strenuously argued for inclusion of the instruction in the packet of instructions tendered to the jury. Following its earlier rulings, this Court refused to give the qualified immunity jury instruction. In doing so, the Court indicated that it had already ruled: 1) that the speech at issue was protected speech and that at the time of the incidents underlying this action it was clearly established law that the plaintiffs could not be terminated in retaliation for

the speech in question; and 2) that whether the employees had been terminated in violation of such rights was an issue of fact for the jury. The jury, consistent with the plaintiffs' theory of the case, found that the plaintiffs had been terminated in violation of their First Amendment rights.

Neither beaten nor even hardly wearied, the defendants indefatigably raise the issue yet again, contending that the "major error is still the failure not to instruct the jury regarding qualified immunity." Defendants' brief at 2–3. The defendants have cause to be persistent. The issue has become unnecessarily confused. There is no doubt that it is both nettlesome and important. The Court will therefore set forth its reasoning in some detail.

### A.

At the outset, the Court notes that it would have thought that this issue had been resolved by *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), in which the United States Supreme Court noted that the availability of the qualified immunity defense is a question of law. *Id.* at 527–28, 105 S.Ct. at 2816. Any first year law student knows that questions of law do not raise jury issues, since a jury acts only as the trier of fact. Indeed, the Tenth Circuit has stated unequivocally that because qualified immunity is a legal issue, "this issue should not ... be[ ] submitted to the jury." *Melton v. City of Oklahoma City*, 879 F.2d 706, 726 (10th Cir.1989). *See Lutz v. Weld County School District No. 6*, 784 F.2d 340, 343 (10th Cir.1986);[1] *see also, Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991); *Hughes v. Meyer*, 880 F.2d 967, 994 (7th Cir.1989); *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir.1988); *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); *Jones v. Chicago*, 856 F.2d 985, 994 (7th Cir.1988); *Rakovich v. Wade*, 850 F.2d

---

**1.** In *Lutz* the Tenth Circuit held that the district court erred when it submitted the qualified immunity defense to the jury. The court suggested, however, that a defendant might be entitled to a qualified immunity defense instruction in those cases presenting a fact issue under the "exceptional circumstances" exception articulated in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See id.* at 343.

1180, 1201–02 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *Holt v. Artis*, 843 F.2d 242, 245–46 (6th Cir.1988); and *Garionis v. Newton*, 827 F.2d 306, 309 (8th Cir.1987).[2] Nevertheless, the defendants insist that they were entitled to the requested instruction.

The defendants' theory of their qualified immunity defense is straightforward. The defendants asserted at trial that the plaintiffs were terminated not because of their petition but as a result of a university-wide reorganization. They argued that based on the evidence presented at trial, the jury could conclude that the defendants had acted in an "objectively reasonable" manner and thus find that they were entitled to qualified immunity. Essentially, then, the defendants contended that they would be entitled to qualified immunity *unless* the jury found that they had terminated the plaintiffs in retaliation for exercising their First Amendment rights.[3] In light of the Tenth Circuit's remand of this Court's determination that factual issues precluded summary judgment, the defendants argue that the Tenth Circuit transformed the qualified immunity issue in this case into a question of fact and intended for the issue to be decided by the jury. Therefore, the defendants insist, they were entitled to a qualified immunity instruction.

The flaw in the defendants' analysis derives from their failure to distinguish between the subjective element of a plaintiff's substantive constitutional claim and the question of a defendant's state of mind as it has arisen in the context of the qualified immunity defense. As the Third Circuit Court of Appeals stated in an analogous case:

> When a § 1983 action is based on defendants' misuse of criminal process by the initiation of criminal charges against plaintiff without probable cause or for personal animosity ..., it is necessary to distinguish between the alleged lack of probable cause or malice underlying the criminal charges as an element of plaintiff's substantive § 1983 claim, and the allegation of malice sufficient to preclude defendants from summary judgment on their qualified immunity defense. The issues are analytically distinct, *see Barker v. Norman*, 651 F.2d 1107, 1123–24 (5th Cir.1981); S. Nahmod, *Civil Rights & Civil Liberties Litigation* § 3.02, at 64 (1979).

*Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 907 (3d Cir.1984). *See generally*, S. Balcerzak, Note, *Qualified Immunity*

---

**2.** In claims arising under the Fourth Amendment some circuits, including the Tenth Circuit, *see Shank v. Naes*, 773 F.2d 1121 (10th Cir.1985) and *Bledsoe v. Garcia*, 742 F.2d 1237, 1241 (10th Cir.1984), have approved submitting the qualified immunity defense to the jury. *See Thorsted v. Kelly*, 858 F.2d 571, 575 (9th Cir.1988); *McElveen v. County of Prince William*, 725 F.2d 954, 957–58 (4th Cir.1984); *B.C.R. Transport Co., Inc. v. Fontaine*, 727 F.2d 7, 10 (1st Cir.1984); *Bauer v. Norris*, 713 F.2d 408, 411 & n. 6 (8th Cir. 1983). The Court is not aware of any reported cases other than those arising under the Fourth Amendment in which a circuit court has approved submitting this defense to a jury. In light of *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), treating the qualified immunity defense as a question of fact in 4th Amendment claims may be warranted, but only in those few cases "in which the facts as the jury found them constitute conduct that a reasonably objective official would not have known was unconstitutional." Rudovsky, *Qualified Immunity in the Supreme Court*, 138 U.Pa. L.Rev. 23, 72 (1989). This is not such a case. Additionally, none of the cases cited above contain an extensive discussion of the principles at issue; indeed, some seem to have proceeded under a misunderstanding of the applicable law. *See McElveen, supra*, 725 F.2d at 957–58 ("The County ... argues that in *Harlow v. Fitzgerald* the Supreme Court abolished the subjective element of the good-faith defense. We disagree.").

**3.** Alternatively, the defendants may believe that the jury could have found *both* that the plaintiffs were terminated in retaliation for exercising their First Amendment rights *and* that the defendants were entitled to qualified immunity because their actions were "objectively reasonable." The Tenth Circuit clearly foreclosed this result in that portion of its opinion in this case quoted above. The absurdity of such a result is patent. The jury, having determined that the plaintiffs were fired for exercising their First Amendment rights, would have necessarily rejected the basis of the defendants' qualified immunity defense—that is, the contention that the plaintiffs were terminated only as a part of the university-wide reorganization. It is precisely the possibility of such confusion that is avoided by addressing the qualified immunity defense as a question of law.

*for Government Officials,* 95 Yale L.J. 126 (1985). As will be seen, however, the defendants perspective reflects a not uncommon error.

### B.

■ In many cases, facially neutral acts will form the basis of a constitutional claim. Such is the case here: the plaintiffs' termination was an entirely neutral act. However, impermissible motive will transform these otherwise innocuous acts into constitutional torts. In such cases the existence of a constitutional violation is dependant upon proof of unlawful intent. *See Gutierrez v. Municipal Court of the Southeast Judicial District, County of Los Angeles,* 838 F.2d 1031, 1050 (9th Cir. 1988). In this case the plaintiffs could prevail on their substantive constitutional claims only by proving that they were discharged in retaliation for exercising their First Amendment rights. Since the jury found in favor of the plaintiffs it is obvious that the plaintiffs satisfied their burden of proof. Logically then, the jury determination of liability negates the defendants' qualified immunity defense. *Cf. Wade v. Hegner,* 804 F.2d 67, 72 (7th Cir.1986); *Hobson v. Wilson,* 737 F.2d 1, 29–30 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *Wood v. Sunn,* 852 F.2d 1205, 1208 (9th Cir.1988), *vacated,* 880 F.2d 1011 (9th Cir. 1989).

Every court that has directly confronted this issue has determined that the subjective element of a plaintiff's substantive claim is distinct from the question of a defendant's entitlement to qualified immunity on the basis of his "objective reasonableness." *See Auriemma v. Rice,* 910 F.2d 1449, 1453–54 (7th Cir.1990); *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 45–47 (1st Cir.1988); *Gutierrez, supra,* 838 F.2d at 1047–51; *Musso v. Hourigan,* 836 F.2d 736, 741–43 (2d Cir.1988); *Wade v. Hegner,* 804 F.2d 67, 69–70 (7th Cir.1986); *Losch, supra,* 736 F.2d at 907; *Goodwin v. Circuit Court of St. Louis County, Mo.,* 729 F.2d 541, 545–46 (8th Cir.1984); *Mody v. City of Hoboken,* 758 F.Supp. 1027, 1033 (D.N.J.1991); *Garcia v. Williams,* 704 F.Supp. 984, 997–98 (N.D.Cal.1988); *Lacey v. Borough of Darby, Pa.,* 618 F.Supp. 331, 337 (E.D.Pa.1985); *cf. McMillan v. Svetanoff,* 793 F.2d 149, 155 n. 3 (7th Cir.1986).

The Eighth and Ninth Circuits have gone so far as to hold that qualified immunity is simply not available as a defense in these cases. In *Goodwin* the Eighth Circuit, rejecting the contention that the defendants were entitled to a qualified immunity jury instruction, stated:

> If the jury finds that intentional discrimination has occurred, and if, as in this case, the evidence is sufficient to support that finding, "good faith" on the part of the defendant is logically excluded.

*Id.* at 546. The Ninth Circuit trenchantly analyzed the issue in *Gutierrez:*

> If the plaintiff fails to establish that the discrimination was intentional, the claim fails. If the plaintiff does establish such intent, there can be no qualified immunity. Thus, it seems simpler to say that qualified immunity is not a defense in such cases, rather than that the defense prevails where proof of intentional discrimination is not established.

*Id.* at 1051, n. 29. The First Circuit underscored the reasonableness of this analysis in *Feliciano–Angulo* when it concluded that "[i]t may well be that once [the question of subjective intent is] settled, there will be no real immunity issue left to decide." *Id.* at 47.

The Seventh Circuit undertook the most extensive discussion of this issue in *Wade v. Hegner, supra.* Wade charged Hegner with intentional racial discrimination; to prevail under the substantive law of his claim, Wade was required to prove that Hegner had been motivated by impermissible considerations. In response to the defendant's claim that *Harlow* barred inquiry into his state of mind, the court stated:

> Hegner confuses the "intent" issues in applying the *Harlow* standard. Two separate intent or state of mind issues exist in this case. One is related to the offense and the other is related to the defense. For purposes of the "offense" (whether Hegner discriminated) plaintiffs' supported allegations are assumed

true, including intent. Once those allegations demonstrate a constitutional violation, the issue of intent is put aside. Then the "defense" (qualified immunity) is analyzed without any reference to intent, as mandated by *Harlow*. Intent is relevant to the threshold question of whether the defendant violated plaintiffs' constitutional rights but is ignored for a question of whether that right was "clearly established" at the time of the incident.

*Id.* at 69–70. The court concluded that: the district court must conduct a two-part analysis: (1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question? But appellate review of a denial of summary judgment on the issue of qualified immunity is limited to the legal question of whether the law was well established at the time of the conduct. Intent is relevant to (1) but not to (2).

*Id.*

The United States Supreme Court has not yet reached this issue. However, in *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), Chief Justice Rehnquist clearly indicated that courts should determine whether the plaintiff has satisfactorily alleged a violation of his constitutional or statutory rights before going on to consider whether a defendant is entitled to qualified immunity. The Chief Justice wrote that,

> We granted certiorari in order to clarify the analytical structure under which a claim of qualified immunity should be addressed. We hold that the petitioner in this case failed to satisfy the first inquiry in the examination of such a claim; he failed to allege the violation of a clearly established constitutional right.

*Id.* 111 S.Ct. at 1793. This case came before the Court in the context of a defendant's claim for qualified immunity. Although the Court's opinion indicates that it is discussing the proper procedure to be followed in addressing a *claim* for qualified immunity, it is clear that the court affirmed dismissal of the claim because Siegert's complaint failed to state a valid claim for relief, not because Gilley was entitled to qualified immunity.[4] The case by analogy thus supports the approach taken by the circuit courts in the cases discussed above.

▮ As the reasoning in these cases demonstrates, where the right is clearly established, a defendant to a claim requiring proof of impermissible motive is not entitled to qualified immunity. If the plaintiff is unable to prove that the defendant's facially neutral acts were tainted by an unlawful motive, then the defendant's conduct does not "set out a constitutional violation." *Wade v. Hegner, supra,* at 70; *cf. Siegert v. Gilley, supra,* 111 S.Ct. at 1793. Having committed no unlawful act, there is no liability from which the defendant need claim immunity. Conversely, if the plaintiff does prove that the defendant acted with the requisite unlawful intent, then the defendant has violated the clearly established law and cannot claim immunity under *Harlow*. Finally, if after discovery a genuine issue of fact exists concerning the defendant's intent under the substantive law governing the plaintiff's claim, then that question (the question of liability) must be resolved by the jury. It follows *a fortiori* that under such circumstances it would be inappropriate to tender to the jury an instruction on qualified immunity.

Carefully distinguishing between the qualified immunity analysis and the subjective element of the substantive constitutional claim in no way diminishes the effica-

---

**4.** Nowhere in its opinion does the Court state directly that the defendant was entitled to immunity, in spite of the fact that the Court clearly indicates that it is discussing an "approach to a claim of immunity." *Id.* 111 S.Ct. at 1794. Thus the opinion supports the proposition that in response to a motion for qualified immunity a court must first determine whether the plaintiff has made out a valid constitutional claim.

Where the plaintiff cannot state a claim, or where (on a motion for summary judgment) his evidence fails to support such a claim, the Court should simply dismiss the case or grant summary judgment on the merits. Only if the plaintiff has satisfied the first test should a court go on to consider the defendant's entitlement to qualified immunity.

cy of the qualified immunity defense. First, a public official will always be entitled to qualified immunity whenever a particular plaintiff fails to demonstrate that clearly established law prohibited the defendant's allegedly unlawful conduct. Second, just as a court can limit discovery to the issue of the defendant's intent when the inquiry proceeds under the rubric of "qualified immunity," *see, e.g., Martin v. D.C. Metropolitan Police Department,* 812 F.2d 1425, 1436–38 (D.C.Cir.1987), so too can discovery be limited to that very same issue when it proceeds in an effort to determine *liability* rather than qualified immunity. Finally, a defendant will be entitled to summary judgment on the merits after the close of the limited discovery permitted by the court whenever a plaintiff is unable to show that there are genuine questions of fact concerning the subjective element. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). This procedure will, therefore, neither impede a government official's right to be free of "the cost of trial [and] the burdens of broad-reaching discovery," *Harlow v. Fitzgerald, supra,* 457 U.S. at 817, 102 S.Ct. at 2738, nor deprive him of his right to "the resolution of many insubstantial claims on summary judgment." *Id.* at 818, 102 S.Ct. at 2738.

While the analytical distinction emphasized here in no way diminishes the various interests implicated by the qualified immunity defense, it does have the virtue of eliminating the foundation upon which the defendants base their arguments regarding this issue—that is, the endemic confusion enveloping this area of the law.

## C.

Despite the logical clarity of the law discussed above, in *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642 (10th Cir.1988), the Tenth Circuit inadvertently lent credence to the contention that under circumstances similar to those presented here, the qualified immunity defense should be submitted to the jury. *Pueblo* and the line of cases following it have created the mistaken impression that the existence of a genuine question of fact concerning the subjective element of a plaintiff's substantive claim always transforms the issue of qualified immunity into a question of fact. Yet this not only contradicts the authority discussed above, it is inconsistent with the court's admonition in the *Pueblo* decision itself that "[t]he question for the trial court to resolve is a legal one; the court cannot avoid the question by framing it as a factual issue." *Id.* at 646.

■ The trouble can be traced to one particularly thorny aspect of *Harlow v. Fitzgerald, supra,* 457 U.S. at 800, 102 S.Ct. at 2727. *Harlow* established a purely objective standard for the determination of qualified immunity. When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See id.* at 818, 102 S.Ct. at 2738. As the Tenth Circuit has noted, prior to *Harlow,*

> qualified immunity contained both an objective and a subjective component. Because of its subjective component, qualified immunity was often ineffective in resolving insubstantial suits against government officials before trial.

*Pueblo, supra,* 847 F.2d at 645.

The pre-*Harlow* method of analysis had been set forth in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), where the Supreme Court articulated a two-pronged qualified immunity analysis. First, the objective prong directed that an official would be stripped of qualified immunity if he knew or reasonably should have known that his actions would violate a clearly established right. Second, under the subjective prong a public official who acted with malicious intent would lose his immunity even if the law was not clearly established. *See id.* at 322, 95 S.Ct. at 1001. The subjective prong proved to be a not insignificant barrier to disposing of marginal constitutional claims

prior to trial. *See e.g., Landrum v. Moats,* 576 F.2d 1320 (8th Cir.1978) and *Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977). In *Harlow* the Supreme Court foreclosed—for the purposes of qualified immunity—any inquiry into a government actor's state of mind. One effect of the decision is to preclude liability whenever the plaintiff fails to show that the right claimed to have been violated was not clearly established.

This objective analysis potentially conflicted with those claims based on facially neutral acts. As discussed in Part B of this opinion, acts which are otherwise lawful nevertheless violate the Constitution if the actors are motivated by unlawful considerations. Applied literally, the Supreme Court's unequivocal language in *Harlow* threatened to eviscerate the civil rights remedy in this class of cases. *See, e.g., Halperin v. Kissinger,* 807 F.2d 180, 183–87 (D.C.Cir.1986). Thus, in the seminal case of *Martin v. D.C. Metropolitan Police Department, supra,* 812 F.2d at 1425, the court held that in such cases *Harlow* did not preclude inquiries into subjective intent. *See id.* at 1433.

The *Martin* plaintiff alleged that the defendants arrested him in solely to "stop him from vindicating his legal rights." *Id.* at 1431. Martin's constitutional claim depended entirely upon proof of impermissible motive. The defendants contended that their evidence that they had acted in an objectively reasonable manner absolutely entitled them to qualified immunity. They argued that under *Harlow* the court was foreclosed from considering any evidence concerning their state of mind. Thus the *Martin* court was forced to resolve whether, under *Harlow,* a defendant who has demonstrated that he is entitled to qualified immunity in the absence of inquiry into his state of mind is entitled to foreclose proof by the plaintiff of the subjective element of his constitutional claim. The court rejected this attempt to use qualified immunity as a sword rather than a shield.

The *Martin* court, however, was not content with simply establishing this important rule of law. Instead, concerned that under its analysis courts might "lose sight of the goal the *Harlow* Court had in view when it set an objective standard in the qualified immunity context," *id.* at 1433, the court went on to discuss at length the manner in which courts could "strike a fair balance" between the government's interest in the prompt termination of vexatious suits on summary judgment and the public's interest in the vindication of constitutional rights. *Id.*

In *Pueblo,* the Tenth Circuit seized upon the *Martin* court's discussion of procedure. The plaintiffs' constitutional claims were governed by substantive law requiring proof of a subjective element. As in *Martin,* the defendants argued that *Harlow* foreclosed any consideration of their subjective intent and claimed that they were absolutely entitled to qualified immunity based on their showing of objective reasonableness. The Circuit rejected this argument, following *Martin*'s reasoning. The *Pueblo* court ruled, however, that the defendants were entitled to summary judgment on the issue of qualified immunity because there existed no genuine issue of material fact concerning the subjective element of the plaintiffs' claims. Relying on the *Martin* dicta, the Circuit in *Pueblo* went on to discuss the proper analysis to be followed by courts whenever they were confronted with similar motions for summary judgment on the basis of qualified immunity. The Court thus concluded that, henceforth, defendants would be entitled to qualified immunity on a motion for summary judgment whenever "the plaintiff [fails to] point[ ] to specific evidence that the official's actions were improperly motivated" in those cases "[w]here the defendant's subjective intent is an element of the plaintiff's claim and the defendant has moved for summary judgment based on a showing of the objective reasonableness of his actions...." *Pueblo, supra,* 847 F.2d at 642.

It is difficult to quarrel with the result in *Pueblo.* There is nothing unsound about the Circuit's analysis. The defendants moved for summary judgment. In response, the plaintiffs were unable to establish the existence of a genuine issue of

material fact concerning one of the essential elements of their claims. Given the posture of the case there is no doubt that the defendant was entitled to judgment as a matter of law. *See Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53 and *Liberty Lobby, Inc., supra,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Yet the decision has been criticized,[5] and in the three and one-half years since its publication the case has been cited favorably outside of the circuit only twice, once only in passing by the Ninth Circuit in *Branch v. Tunnell,* 937 F.2d 1382, 1386 (9th Cir.1991) and once in a concurring opinion. *See Collinson v. Gott,* 895 F.2d 994, 1002 (4th Cir.1990) (Phillips, J., concurring).

*Pueblo*'s infirmity rests neither in its result nor in its reasoning. The problem with *Pueblo,* and that part of *Martin* on which it relies, is that it conflated the question of a defendant's liability under the substantive law governing a claim with the issue of a defendant's entitlement to qualified immunity. Instead of simply holding that the *Pueblo* defendants could not be held liable based on the uncontradicted evidence then before the court,[6] the court ruled that the same evidence which proved that the defendants had committed no constitutional violation entitled them to qualified immunity.

Yet it should be obvious that one who has done no wrong has no need for any kind of immunity. Regrettably, the Circuit

reached its conclusion without directly confronting the distinction between the substantive law controlling the question of liability and the law applicable to the qualified immunity defense. The *Pueblo* court therefore had no occasion to consider the appropriateness of granting immunity on the basis of evidence that establishes that the immunized officer did not violate the law.[7] The Circuit thus opened the door to precisely the debate raging here. All this in spite of its otherwise unequivocal statements that qualified immunity is purely a question of law to be addressed by the Court, rather than a question of fact to be resolved by a jury.

With all due respect to the Circuit, this Court believes that in *Pueblo* and its progeny the Circuit has unnecessarily confused the nature of the qualified immunity analysis in cases of this sort. Like the First, Second, Third, Seventh, Eighth and Ninth Circuits, this Circuit should maintain a firm distinction between the plaintiff's burden of proof under the applicable substantive law and a defendant's entitlement to qualified immunity. When there is no proof to support a plaintiff's claim that a facially neutral act was infected by a defendant's constitutionally impermissible motive, the defendant is entitled to summary judgment because he has committed no act for which he can be held liable. In such situations the qualified immunity analysis is simply irrelevant. As discussed

---

**5.** *See,* Rudovsky, *supra* note 1, at 62 & n. 230.

**6.** Given the posture of the case on interlocutory appeal, of course, such a ruling was procedurally unavailable to the court.

**7.** This is a not uncommon flaw in many of the opinions addressing this issue. Typically, the court of appeals is presented with the issue after a district court rejects a defendant's motion for judgment based on the qualified immunity defense. The defendants make arguments similar to those advanced by the *Pueblo* defendants. The circuit court rejects these arguments but nevertheless states that qualified immunity would be appropriate if the plaintiff is unable to prove facts supporting his claim of impermissible intent. Curiously, these courts fail even to *address* those logical inconsistencies inherent in such a line of reasoning identified by the courts in *Gutierrez, Goodwin, Losch, Wade,* and *Felici-*

*ano–Angulo.* Thus, for example, Justice Scalia (sitting as Circuit Justice) cogently and extensively explicated Harlow's potential impact on impermissible motive claims in *Halperin v. Kissinger, supra,* yet never once even *noted* that the plaintiff's failure to satisfy an essential element of his substantive claim would exonerate the defendant. Thus Justice Scalia never addressed the relevance of the immunity doctrine under these circumstances. Even the Ninth Circuit, without addressing *Gutierrez,* has fallen prey to this problem. *See Branch v. Tunnell, supra,* 937 F.2d at 1382. *See also, Poe v. Haydon, supra,* 853 F.2d at 430–432; *Coen v. Runner,* 854 F.2d 374, 378 (10th Cir.1988); *Martin, supra,* 812 F.2d at 1433–38; and *Kenyata v. Moore,* 744 F.2d 1179, 1185 (5th Cir.1984). As a result, this Court is aware of no case in which any court has held that qualified immunity is available even though the defendant could not be liable under the substantive law.

above, this approach will protect civil servants from the burden of unwarranted litigation and thus will not undermine the considerations which guide the qualified immunity analysis. Government officials will be entitled to precisely the same panoply of procedural protections against unwarranted and frivolous lawsuits as they are currently.[8] Neither defendants nor plaintiffs will, however, be confused into believing that, through some jurisprudential gimmickry, a doctrine which has heretofore been unequivocally characterized as a question of law has mysteriously metamorphosed into a jury issue.

### D.

Many of the issues addressed in this part of this opinion turn on a slight and seemingly insubstantial disagreement. The defendants in this case insist that proof that they did not violate the constitution entitles them to qualified immunity. This Court believes rather that an individual who has not violated the Constitution has no need for immunity. Notably, under either analysis the result will be the same: a failure of proof results in a ruling that the defendants cannot be held liable.[9] Some would say that this result moots the issue. Yet it

is in the nature of the law that a seemingly insignificant difference often evolves into a source of tremendous confusion and dissension. Such has been the case here.

■ In any event, whether the Circuit agrees with this Court's analysis of the qualified immunity defense as it applies to impermissible motive constitutional claims, there is no doubt that under *Melton v. City of Oklahoma City, supra,* 879 F.2d at 726, the defendants were not entitled to a jury instruction addressing their qualified immunity defense. *See also, Goodwin v. Circuit Court of St. Louis County, Mo., supra,* 729 F.2d at 545–46.

### II. Other Alleged Errors

■ The petition circulated by the plaintiffs clearly covered areas of public concern, specifically in its allegations of inefficiency and waste on the part of the University administration. *See Schalk v. Gallemore,* 906 F.2d 491 (10th Cir.1990). Simply because some of the allegations may have been "stale" or "erroneous" does not negate the petition's protected status. Id. at 496. *See also Wulf v. Wichita,* 883 F.2d 842, 858–59 (10th Cir.1989). On the whole, the issues presented in the petition qualify as those of "public concern" under *Con-*

---

**8.** This methodology might bar interlocutory appeals in some cases. More significantly, in light of the law in this circuit, it might alter the plaintiff's burden in defense of a defendant's motion for summary judgment. After reviewing the plaintiff's evidence, the *Pueblo* court stated that,

> [e]ven if these statements could be construed to allow a plaintiff to remain in court in *an ordinary case,* they will not be adequate in a case of *this type.* We agree with the *Martin* court that "[t]he Supreme Court's 'strong condemnation of insubstantial suits against government officials' impels the application of a standard more demanding of the plaintiffs when public officer defendants move for summary judgment on the basis of their qualified immunity."

*Pueblo, supra,* 847 F.2d at 649 (emphasis added). This and other language throughout the opinion indicates that to resist either a motion to dismiss or a motion for summary judgment on the grounds of qualified immunity a plaintiff must satisfy a steeper burden than is otherwise applicable. Presumably, then, under the analysis proposed in this opinion the plaintiff would need only present evidence deemed sufficient in

"an ordinary case." *Id.* Of course, the Circuit might not hesitate to impose the heightened standard even when the summary judgment issue does not directly reach the qualified immunity defense; obviously, in cases of this kind, the concerns underlying the qualified immunity analysis are implicated as much in an "ordinary" motion for summary judgment as they are in a motion for qualified immunity.

**9.** Of course, qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). As this court has taken great pains to demonstrate in the course of this opinion, its disagreement with the defendants would not undermine this concern. A plaintiff who failed to plead facts sufficient to support a claim of impermissible intent would not be able to withstand a motion to dismiss. Discovery can be limited to the issue of the defendant's intent. Summary judgment will be appropriate when a plaintiff cannot produce evidence sufficient to establish a genuine issue of fact regarding the defendant's intent. These are precisely the concerns identified by the court in *Pueblo. See Pueblo, supra,* 847 F.2d at 646, 649–650.

*nick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Furthermore, there was no indication that Highland University's "interest in the effective and efficient fulfillment of its responsibilities to the public" was in any way threatened by the plaintiffs' petition. *See Melton v. Oklahoma City,* 879 F.2d 706, 713 (10th Cir.1989) (citing to *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). Therefore, the Court properly instructed the jury as to the protected nature of the plaintiffs' speech.

With respect to the qualified immunity analysis, I found that at the time these events took place in 1987 the protected nature of the plaintiffs' speech within the petition was sufficiently clear that the defendants were reasonably on notice that retaliation on the basis of the petition could not be "objectively reasonable." *See Melton* at 729. Thus, these public officials (the defendants) lost any immunity for actions in their individual capacities for violations of this clearly established law. *See id.*

The defendants further contend that they were entitled to instructions on the nature of their individual liabilities to the plaintiffs. Surely such an instruction could only serve to introduce sympathy and prejudice on the defendants' behalf. Defendants' assertion that the jury must have contemplated University payment of the punitive damages because of their size is unpersuasive. The jury imposed lower punitive damages as to defendant Rogers. Thus, it seems to have taken individual liability into account by imposing greater punishment on the more culpable defendants Sanchez and Jahner.

Moreover, the Court does not find the damage awards "so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial...." *See Southwest Forest Industries, Inc. v. Sutton,* 868 F.2d 352, 357 (10th Cir.1989). Little evidence adduced at trial addressed the financial status of the defendants, but enough was presented to aid the jury in its assessment of punitive damages. See plaintiffs' Brief at page 8–9. Although counsel for the defendants objected to the Court's instruction regarding how to assess punitive damages, he failed to provide an alternative. Instead, he indicated "I am not sure there is a standard for it, Your Honor."

Punitive damages are "designed to punish a wrongdoer who has purposely committed an act of extraordinary, outrageous misconduct, and has maliciously deprived another person of his or her rights" and the jury was so instructed. Court's Instruction # 44. A reasonable jury could be outraged by evidence that despite their long services to the University, plaintiff Sandoval was given 30 minutes to pack his belongings, and plaintiff Sanchez was given only one week notice. The jury could reasonably find that the circumstances warranted the imposition of punitive damages in the amounts it determined.

Defendants' objection to the conspiracy instruction is also without merit. *See Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836 (7th Cir.1984). The issue of conspiracy under Section 1983 was litigated with the implied consent of the defendants. Indeed, under the facts of this case, evidence supporting a conspiracy was in fact indistinguishable from evidence under any of the plaintiffs' other theories. Plaintiffs properly tendered the appropriate instruction on a Section 1983 conspiracy. *See Dixon v. City of Lawton,* 898 F.2d 1443, 1448–49 (10th Cir.1990). Having found under Fed.R.Civ.P. 15(b) that the defendants had a fair opportunity to defend and were not prejudiced by amendment of the pleadings, the instruction on the conspiracy claim was proper.

Insofar as the defendants assert error instructing the jury on theories of substantive and procedural due process, the Court is unpersuaded that its instructions misstate the law of this Circuit. *See Brenna v. Southern Colorado State College,* 589 F.2d 475 (10th Cir.1978). Defendants object to the verdict's interrogatory

which asked whether defendants breached the employment contract between the University and the plaintiffs by not following the discharge procedures outlined in the Employee Manual.

Assuming that a breach of contract claim could only be addressed if the University were a party to the lawsuit, a new trial is still not required. This inquiry was relevant to the due process claims and no instructions were given authorizing an award of breach of contract damages. Even if these due process theories or the interrogatory regarding breach of contract could be said to interpose a false issue, their inclusion did not prejudice the defendants such that a new trial would be required. The court's instructions expressly prohibited duplication of damages or double recovery for injuries. "A fundamental premise of our jury system is that the jury can and will follow the instructions given by the trial court." *U.S. v. Brown,* 943 F.2d 1246, 1255 (10th Cir.1991).

In summary, issues of law related to the protected nature of the speech and entitlement to qualified immunity were properly decided by the Court. Moreover, the instructions to the jury were sufficiently accurate to guide the jury in its deliberations and any errors do not prejudice the defendants. Because its verdict is supported by evidence adduced at trial, the defendants' motion will be denied.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED:

1. Defendant's Motion for Judgment Notwithstanding the Verdict, or in the Alternative for a New Trial, be, and hereby is, *denied.*