**UNITED STATES COURT OF APPEALS**
**Filed 6/27/96**
**FOR THE TENTH CIRCUIT**

———

JOHNATHAN MARTIN WARWICK,      )
                                   )
    Plaintiff-Appellant,     )
                                   )
v.                             )     No. 95-5250
                                 )  (D.C. No. 95-C-454-B)
PHILLIP EDWARD SNOW, individually )  (N. Dist. of Okla.)
and in his official capacity as a  )
police officer of the City of    )
Tulsa, Oklahoma; BRYAN KEITH SMITH,)
Individually and in his official   )
capacity as a police officer of the)
City of Tulsa; JOHN M. CRAWFORD,   )
individually and in his official   )
capacity as a police officer of the)
City of Tulsa; and other presently )
unknown officers and officials,    )
individually and in their official )
capacities as employees of the     )
Tulsa Police Department,          )
                                   )
    Defendants-Appellees.    )

———

**ORDER AND JUDGMENT**[*]

———

Before **SEYMOUR, BARRETT, and LIVELY\***, Circuit Judges.

———

\*The Honorable Pierce Lively, Senior Judge, United States Circuit Court of Appeals for the Sixth Circuit, sitting by designation.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

_____

Jonathan Martin Warwick (Warwick) appeals from an order and judgment of the district court granting summary judgment in favor of Phillip Snow (Snow), Bryan Smith (Smith), and John Crawford (Crawford), individually, and in their official capacities as police officers of the City of Tulsa, Oklahoma (City of Tulsa), and the City of Tulsa, hereinafter collectively referred to as "appellees." A summary of the stipulated facts follows.

During the early morning hours of November 29, 1993, Snow, while in uniform and acting in the scope of his employment as a Tulsa Police officer, responded to a call reporting that a suicidal subject was in the LaFortune Towers Apartments with a gun. Upon arrival, Snow met with the complaining witness and then proceeded with Smith to the eighth floor of the apartment house to look for the subject.

At approximately 4:20 a.m., as Snow and Smith were checking an apartment, they heard someone approaching them from behind. When they turned around, they observed Warwick walking down the hallway toward them. Warwick had a .22 calibre pistol in his hand, with the barrel in his mouth. Warwick, who had been drinking alcohol, was mumbling that he had no reason to live and that he wanted to die. The officers positioned themselves at the corners and at the end of the hallway which was lined with resident apartments. They

yelled for Warwick to stop and not point the gun at them. Two apartment residents opened their doors into the hallway. At the officers' requests, the residents returned to their apartments and closed their doors.

At that point, Warwick, who was on Snow's side of the hallway, leaned against the wall, crouched down, pulled the gun out of his mouth and pointed it at Snow. Snow immediately fired multiple shots at Warwick in rapid succession. Warwick was hit by the shots and he dropped his gun.

Although Warwick went down, he was conscious and it appeared to the officers that he was trying to grab his gun. The officers approached Warwick and Snow handcuffed him. Snow used minimal force to get Warwick's hands behind his back and to secure the handcuffs.

At the time of the encounter, Snow and Smith had the "cover" of a hallway corner while Warwick was fully exposed in an open hallway. Warwick had stopped his approach toward the officers and was not attempting to flee. Snow and Smith had requested backup which they expected to arrive soon. During a hearing, it was established that at the time of the incident Warwick was intoxicated and that his gun was loaded.

Warwick was subsequently charged with feloniously pointing a deadly weapon at Snow. Because of Warwick's two prior felonies involving drugs and weapons, the charge carried a maximum sentence

of thirty years imprisonment.  Warwick pled guilty  pursuant to a plea agreement and was sentenced to five years imprisonment.

Thereafter, Warwick filed this suit pursuant to 42 U.S.C. § 1983 alleging that the officers had used excessive force in violation of his Fourth Amendment rights; Snow and Smith had inadequate training;  a conspiracy existed to suppress the number of shots actually fired at him; and, a conspiracy existed to undermine the investigation into the shooting.  Snow, Smith, and Crawford moved for summary judgment.  The City of Tulsa moved to dismiss.  The district court treated it as a motion for summary judgment.

The district court granted appellees summary judgment, finding/concluding  that the officers were entitled to the defense of qualified immunity and that Warwick's allegations of a conspiracy were without merit.

On appeal, Warwick contends that the district court erred in granting summary judgment in favor of appellees.

I.

We review a district court's grant or denial of summary judgment de novo, applying the same legal standard used by the district court.  Lancaster v. Air Line Pilots Ass'n Int'l., 76 F.3d 1509, 1516 (10th Cir. 1996).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Hagelin for

- 4 -

President Comm. of Kansas v. Graves, 25 F.3d 956, 959 (10th Cir. 1994), cert. denied, ___ U.S. ___ (1995). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the non-moving/opposing party. Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995).

## II.

Warwick contends that there were genuine issues of material facts relative to his claims of excessive force which made summary judgment based on the appellees' defense of qualified immunity premature and improper. Warwick asserts that the genuine issues of material facts included: whether he was shot first in the back or in the stomach; whether it was physically possible for Snow to have shot him in the back at the same instant he was pointing a weapon at Snow; the distance between the officers and him; the number of shots which Snow fired; and, the availability of cover. Warwick maintains that although "[u]ltimately, Qualified Immunity may [] be granted to Officer Snow and others . . . the actual material facts must first be established by a fact finding and not by the Court[sic]." (Opening Brief for the Appellant at 19).

Excessive force claims are analyzed under the reasonableness standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394 (1989). The reasonableness inquiry is an objective one and highly fact dependent. Dixon v. Richer, 922 F.2d 1456, 1462 (10th

- 5 -

Cir. 1991). The factors to be considered in determining whether the force used by an officer was reasonable include the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and the whether the subject is resisting arrest. Graham, 490 at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "An officer's use of deadly force in self-defense is not constitutionally unreasonable." Romero v. Board of County Comm'rs, 60 F.3d 702, 704 (10th Cir. 1995), cert. denied, ___ U.S. ___ (1996). Deadly force may be used if an "officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985).

Qualified immunity is an affirmative defense against § 1983 claims alleging excessive force. Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995). The defense provides immunity from suit, not merely from liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Once the defense of qualified immunity is asserted, the plaintiff bears the burden of coming forward with facts "sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the violation occurred." Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988).

The plaintiff "initially bears a heavy" burden and "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996). "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995)(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Applying these standards, we hold that the district court did not err in granting appellees summary judgment on Warwick's excessive force claims based on the affirmative defense of qualified immunity.

Warwick failed to come forward with facts "sufficient to show both that [Snow's] conduct violated the law and that the law was clearly established when the violation occurred," Pueblo Neighborhood Health Ctrs., Inc., 847 F.2d at 646. Moreover, Snow's action was reasonable and withstood Warwick's excessive force claims. The parties stipulated, inter alia, that: Snow was responding to a call within the course and scope of his duties as a City of Tulsa police officer; Warwick was intoxicated in the hallway of an occupied apartment building at 4:20 a.m. with a gun stuck in his mouth; Warwick was threatening to kill himself and his girlfriend and mumbling that he had no reason to live and that he

wanted to die; several apartment occupants had opened their doors into the hallway during the time Warwick was in the hallway with a gun; Snow did not fire at Warwick until after Warwick had taken his gun out of his mouth and pointed it at Snow; and, Snow immediately fired multiple shots at Warwick in rapid succession.

Significantly, Warwick acknowledged that his suit should be terminated if Snow was entitled to the defense of qualified immunity and further acknowledged that the evidence was undisputed and uncontroverted that Snow had fired at him in response to his pointing his gun at Snow:

> The Court:  I'm curious, if . . . Warwick is pointing a loaded weapon at Snow, and they're 15 to 20 feet apart in a lighted area, and Snow is genuinely in fear of danger for himself and his life, and perhaps that of his partner, does he have a right to shoot this guy or not? What is your position on that?  Or is he supposed to stand there and let him shoot first?
>
> Mr. Low (Defense Counsel):  He should not stand there and let him shoot him first.  This is a question of qualified immunity, if it was reasonable for him to shoot him then he should have shot him.  He also had the cover - -
>
> The Court:  In other words, you don't contest that if it's reasonable?  If he was generally in fear that Warwick was pointing his gun at him and was capable of firing that weapon and shooting Snow first, that perhaps it may have been reasonable, is that your point?
>
> Mr. Low:  If a reasonable officer would have thought it proper to shoot Warwick, yes, sir, then qualified immunity would kick in and the suit would be terminated. We maintain it was not reasonable based on the totality of the circumstances.

*          *          *

The Court: Does our record in this case undisputed reflect that Officer Snow was responding to a loaded weapon, at least what he thought was a loaded weapon, being pointed at him 15 or twenty feet away and that's the reason he fired? Is that what our record, uncontroverted establishes?

Mr. Low: Yes.

(Opening Brief for the Appellant, Addendum B at 14-15 and 22).

We hold that Snow's actions were clearly reasonable, rendering summary judgment based on the affirmative defense of qualified immunity appropriate. See Wilson v. Meeks, 52 F.3d at 1555 ("Any police officer in Officer Meeks' position would reasonably assume his life to be in danger when confronted with a man whose finger was on the trigger of a .357 magnum revolver pointed in his general direction.").

III.

Warwick states that the district court erred in granting appellees summary judgment on his conspiracy claim.

Warwick reasons that the officers illegally conspired by under reporting the number of shots which Snow fired at him. This conspiracy, according to Warwick, "was in effect an actual deprivation of [his] rights, as the completion of the conspiracy substantially reduced the apparent amount of force used against [him]." (Opening Brief for the Appellant at 23).

A conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law is actionable.

- 9 -

<u>Snell v. Turner</u>, 920 F.2d 673, 701 (10th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 976 (1991). However, to prevail on such a claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." <u>Dixon v. City of Lawton, Okla.</u>, 898 F.2d 1443, 1449 (10th Cir. 1990).

Warwick failed to prove "an actual deprivation of rights." <u>See</u> Part II, <u>supra</u>. Furthermore, Warwick acknowledged that "[i]f a reasonable officer would have thought it proper to shoot Warwick, yes, sir, then qualified immunity would kick in and the suit would be terminated." (Opening Brief for the Appellant, Addendum B at 14-15). Under these circumstances, we hold that the district court did not err in granting appellees summary judgment on Warwick's conspiracy claims.

**AFFIRMED.**

Entered for the Court:

James E. Barrett,
Senior United States
Circuit Judge