**Roy ROGERS, Plaintiff–Appellant,**

v.

**Alan MORRIS, et al., Defendants–Appellees.**

No. 01–3903.

United States Court of Appeals, Seventh Circuit.

Submitted March 20, 2002.*

Decided March 21, 2002.

Rehearing Denied April 26, 2002.

Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.

ORDER

Wisconsin inmate Roy Rogers sued sixteen employees of the Columbia Correctional Institution (CCI) under 42 U.S.C. § 1983, alleging that they violated his First Amendment rights by withholding various magazines devoted to hip-hop music and culture ("Vibe," "Sister 2 Sister," and "Mo' Flava") and certain "internet materials" sent to him by mail. Rogers argued that although CCI purportedly withheld the magazines under prison regulations banning "pornography" and material that "teaches or advocates ... behavior consistent with a gang," *see* Wis. Admin. Code §§ DOC 309.04(4)(c)(8)(a), .04(4)(c)(10), the magazines lacked pornographic or gang-related content, and that CCI's policy banning Internet materials was facially invalid because prison officials had no rational reason to distinguish such materials from regular mail. The district court granted summary judgment for the defendants, and Rogers appeals.

The defendants supported their motion for summary judgment with affidavits from "Certified Gang Coordinator" Alan Morris and former mailroom supervisor Bruce Thomure. Morris, who testified that he receives ongoing training in gang signs, symbols, and trends, averred that he

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

reviewed all of the withheld magazines and that each contained either pornography or "images" of "gang[-]related identifiers, such as gang signing." Thomure explained in his affidavit that he instituted CCI's ban on "paper-media internet material sent to CCI inmates via U.S. Mail from a person or source other than directly from the publisher or website" because such material increases the risk of sensitive information entering the prison unnoticed: senders can easily use "[c]omputer technolog[ies]" such as "cut[ting] and past[ing]" to embed information in downloaded photographs and articles before printing them, and such alterations are difficult for mailroom personnel to detect.

In both of Rogers's challenges, the question is whether the regulations (as written or as applied) are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *See also Shaw v. Murphy*, 532 U.S. 223, 232, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001); *Thornburgh v. Abbott*, 490 U.S. 401, 404, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Regarding the magazines, Rogers concedes that the defendants have a legitimate penological interest in banning gang-related materials because they may lead to violence; he does not dispute the defendants' contention that they have valid reasons for banning pornography as well. Rogers argues only that *his* magazines do not fall within either category. The only relevant evidence on this point came from Morris's affidavit. Rogers countered with affidavits from long-time readers of the excluded magazines (himself included) who claimed never to have known the publications to include gang-related content, and with copies of photographs from hip-hop magazines that had been approved by mailroom personnel and yet, according to Rogers, were representative of the withheld issues. As the district court recognized, the content of the authorized magazines says nothing about the content of the disallowed issues; indeed, if the screening process is effective, the content of those permitted and those excluded should be quite different. The affidavits are likewise irrelevant because Rogers and the other affiants (all CCI inmates) do not claim to have seen the withheld issues. Nor is Rogers's averment that the withheld issues were allowed at other Wisconsin prisons competent evidence for purposes of summary judgment; he concedes in his affidavit that he based this statement not on personal knowledge but on his "correspondence with various men at [other] facilities who received the publications." In short, Rogers did not establish the existence of a material dispute concerning the application of a policy that he concedes to be legitimate.

As for the ban on Internet materials, Rogers offered no evidence to contradict Thomure's justification for the policy. Moreover, Rogers does not contend that he was unable to obtain the withheld materials "directly from the publisher or website" as the policy permits. We agree with the district court's conclusion that Rogers failed to demonstrate any real dispute concerning the reasonableness of the ban, and note that at least one other court has upheld a similar policy as reasonable. *See In re Collins*, 86 Cal.App.4th 1176, 104 Cal.Rptr.2d 108 (2001) (upholding ban on "Internet-generated material").

Because Rogers failed to show a triable issue as to whether either deprivation violated his First Amendment rights, his assertion that the defendants also "conspired" to commit the violations adds nothing. *See Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857 (7th Cir.1999). His challenge to CCI's grievance procedures also is without merit; Wisconsin provides Rogers adequate state-court remedies to recover for the deprivation of his

mail. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see also, e.g., Richards v. Gamble*, No. 01–0871, 2002 WL 203749, (Wis.Ct. App. Feb.6, 2002) (unpublished) (tort suit against warden for violations of prison policies regarding depositing inmates' funds and disposal of personal property); *Pischke v. Sondalle*, No. 00–0046, 2000 WL 678539 (Wis.Ct.App. May 25, 2000) (unpublished) (small claims action against warden for property lost in prison transfer); *State ex rel. Meriwether v. Melindez*, No. 99–0966, 1999 WL 815602 (Wis.Ct. App. Oct.14, 1999) (unpublished) (action for damages against warden for personal property lost while inmate was in segregation).

Finally, we reject Rogers's contentions that the district court abused its discretion in denying his motions for appointment of counsel and to amend the pretrial scheduling order. As the district court observed, Rogers's pleadings suggested that he was competent to represent himself. *See Hudson v. McHugh*, 148 F.3d 859, 862 n. 1 (7th Cir.1998) (failure to appoint counsel not abuse of discretion where plaintiff appeared, based on his pleadings, to be "as competent as any average pro se litigant"). Rogers's argument concerning the scheduling order is unclear: he insists that the court's denial of his motion to "stay" the deadline for filing dispositive motions unfairly limited his ability to obtain discovery necessary to defend against the defendants' motion for summary judgment, but the motion had not yet been filed when Rogers requested the stay. And even after the defendants filed their motion, Rogers never asked for additional time to respond to it or to conduct discovery. *See* Fed.R.Civ.P. 56(f) (nonmoving party may submit affidavit requesting continuance if further discovery is required to oppose motion for summary judgment); *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir.1993) (Rule 56(f) applies to pro se litigants). We thus fail to see how the ruling affected the outcome.

AFFIRMED.