Craig E. WATERMAN, Plaintiff,

v.

COMMANDANT, UNITED STATES
DISCIPLINARY BARRACKS,
et al., Defendants.

No. CIV.A. 03–3415–CM.

United States District Court,
D. Kansas.

July 20, 2004.

Craig E. Waterman, Leavenworth, KS, pro se.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff, a military prisoner incarcerated at the United States Disciplinary Barracks (USDB), Fort Leavenworth, Kansas, filed this action against the Commandant of the USDB, Colonel Colleen L. McGuire, the USDB Chief of Inmate Services, and the USDB Publications Review Officer (PRO) in their official capacities challenging defendants' decision to deny plaintiff access to certain mail. Specifically, plaintiff claims that the USDB's publication policy allowing mail room personnel to reject incoming mail containing photocopies of publications or materials not coming directly from a publisher or commercial vendor, as applied to him, violates his First Amendment rights. Plaintiff further alleges that defendants' application of the USDB publication policy to deny him one edition of *Prison Legal News*, a nationally-circulated periodical, also violates his First Amendment rights. This matter is before the court on defendants' Motion for Summary Judgment (Doc. 22).

## I. Facts[1]

The facts of this case are largely undisputed. Plaintiff is an inmate at the USDB, serving a sentence of 20 years of confinement. Plaintiff has been confined at the USDB since May 1, 1997. The USDB is the Department of Defense's only long-term maximum security prison that houses some of the United States military's most dangerous prisoners, including those who have been convicted of murder and of violent sex crimes. Thus, security and inter-

nal order and control are major considerations for actions taken by the officials at the USDB.

The USDB maintains a modern, up-to-date law library for the inmates. The USDB's main library is centrally located in the facility, which consists of five computer workstations that run Westlaw's LawDesk legal research software. The USDB has a total of sixteen LawDesk computer workstations throughout the facility. The software is updated regularly, and includes, but is not limited, to the Federal Reporters, Federal Supplements, Supreme Court Reports, U.S.Code Annotated, Military Justice Codes in Titles 10 and 32, Military Justice Reporters, Military Judge's Benchlaw, American Jurisprudence, Manual for Courts–Martial, and the Military Criminal Law Benchbook. The law library also contains numerous shelved volumes of legal materials, and each domicile houses a computer workstation loaded with the LawDesk software.

All printed material mailed to inmates at the USDB is screened in accordance with USDB Regulation 28–1. According to Paragraph 5–1a(2)(1) of this regulation, mail may be rejected if, "Publication/material did not come directly from the publisher or commercial vendor or has been altered after publication by removing or defacing for example, pages, articles, cartoons, photographs, games, advertisements, or calendars." Printed material that is considered questionable for release to inmates under Regulation 28–1 is set aside by mailroom personnel for review by the Publication Review Officer (PRO). When the PRO believes there exists a reasonable basis that a publication violates

---

1. The court notes that plaintiff twice filed an identical pleading entitled "Plaintiff's Cross–Motion for Summary Judgment" (Doc. 27 & 28), which the court considers both a response to defendants' summary judgment mo-

tion and a motion for summary judgment. For purposes of this opinion, the court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

the standards of USDB Regulation 28–1, the PRO advises the inmate in writing of such a decision and the reason(s) for it. At that point, the inmate may accept the decision and dispose of the publication, appeal the PRO's decision to the Commandant by submitting a request in writing through the Advisory Board, or request an exception to policy to the Commandant through the Advisory Board.

The Advisory Board recommends to the Commandant what reading material should be excluded from or allowed in to the inmate population in accordance with the guidelines in USDB Regulation 28–1. The Advisory Board reviews each publication individually and determines, by majority vote, whether to recommend exclusion or inclusion of the publication. The Commandant then reviews the publication, the inmate's appeal, and the Advisory Board's recommendation, and determines whether to allow or deny the inmate access to the publication.

On three separate occasions, plaintiff was denied materials that were sent to him via mail, on the basis that the materials did not come directly from the publisher or commercial vendor. In all three instances, plaintiff requested that the publications be sent through the Advisory Board, for a final decision by the Commandant. USDB Commandant denied plaintiff's appeals and rejected the admission of the publications and material into the institution.

Plaintiff also was denied access to *Prison Legal News*, Volume 15, on the basis that its content posed a threat to the security, safety, good order, or discipline of the institution. The page numbers initially cited as violative were 6, 16, 21, and 25. Plaintiff contends that in a conversation with Judy Williams, the individual who initially denied access to the publication, Williams stated that the periodical was being denied because it contained sexual assault or rape case material. Plaintiff

requested review by the Advisory Board, for a final decision by the Commandant. USDB Commandant denied plaintiff's appeal, stating that the publication instructs in the commission of criminal activity or institutional violations. Defendants contend that the publication contained an advertisement encouraging prisoners to trade their unused stamps for currency, which is a violation of USDB institutional regulations.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party

on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

█ The court acknowledges that plaintiff appears pro se and his response is entitled to a somewhat less stringent standard than a response filed by a licensed attorney. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). However, this does not excuse plaintiff from the burden of coming forward with evidence to support his claims as required by the Federal Rules of Civil Procedure and the local rules of this court. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 649 (10th Cir.1988). Even a pro se plaintiff must present some "specific factual support" for his allegations. *Id.*

## III. Discussion

### A. Proper Parties

Plaintiff has stated that the named defendants were acting in their official capacity during the alleged incidents. A suit against an officer or agent of the United States Government, with respect to actions taken in his or her official capacity, generally is held to be a suit against the United States. *Weaver v. United States,* 98 F.3d 518, 520 (10th Cir.1996). Thus, to the extent plaintiff's action seeks injunctive relief from defendants in their official capacity, the United States is substituted as the sole defendant.[2]

### B. Non–Original Source Materials

As alleged by plaintiff, the following were sent to plaintiff via mail and rejected by defendant: 1) material from the Internet that included common law from the Supreme Court, federal circuits, and federal district courts; 2) material from the Internet that included songs that were religious in nature; 3) paralegal tests that had been copied; 4) Maine State Statutes that had been copied. The court therefore examines the constitutionality of USDB Regulation 28–1, which bans publications or material that did not come directly from the publisher or commercial vendor.

█ In *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the Supreme Court held that regulations governing the receipt of reading materials by inmates must be analyzed under a reasonableness standard, and that such regulations are valid if they are reasonably related to a legitimate penological

---

**2.** For the remainder of this opinion, the court will therefore refer to the defending parties as "defendant."

interest. These determinations should be made using the four-prong inquiry established in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Under this standard, courts must consider (1) whether there is a rational connection between the prison policy and a legitimate governmental interest; (2) whether there are alternative means for inmates to exercise their constitutional rights; (3) the effect that accommodating the exercise of the disputed rights would have on guards, other inmates, and prison resources; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the inmates' rights.

The court begins by considering whether the objective underlying the disputed policy is legitimate and neutral and whether the policy is logically or rationally related to that objective. Defendant contends that the objective of the policy is to promote security. The legitimacy of promoting prison security is beyond question. *Thornburgh*, 490 U.S. at 412, 109 S.Ct. 1874 (protecting prison security is central to all other corrections goals). Moreover, the policy appears to operate in a neutral fashion, banning all non-original source generated regular mail without regard to content. Defendant further contends that incoming mail that is not original source material, including Internet-generated material, is presumptively tainted, and thus a risk to the security of the institution.

█ In *Rogers v. Morris*, 34 Fed. Appx. 481 (7th Cir.2002), the Seventh Circuit upheld a Wisconsin state correctional institution's ban on "paper-media internet material sent to CCI inmates via U.S. Mail from a person or source other than directly from the publisher or website." As argued in *Rogers*, defendant in this case contends that allowing Internet material

and material from a person or source other than directly from the publisher "increases the risk of sensitive information entering the prison unnoticed: senders can easily use '[c]omputer technolog[ies]' such as 'cut[ting] and past[ing]' to embed information in downloaded photographs and articles before printing them, and such alterations are difficult for mailroom personnel to detect." *Id.* at 482. Defendant also asserts that prohibiting the entrance of non-original source material is also a way of deterring inmates from violating copyright laws.[3] The court determines that the policy disallowing non-original source material is rationally related to legitimate penal objectives.

The court next considers whether there are alternative means for plaintiff to exercise his constitutional rights. Foremost, the court notes that plaintiff does not contend that he was unable to obtain the withheld materials directly from the publisher or commercial vendor as the policy permits. USDB regulations permit inmates to obtain a wide variety of publications, as long as those publications are obtained from an original source. The second *Turner* factor is therefore satisfied.

The third factor concerns the effect that accommodating the exercise of the disputed right would have on guards, other inmates, and prison resources. With respect to publisher-only material, the Supreme Court has upheld a regulation requiring that hardback books be mailed directly from publishers, *Bell v. Wolfish*, 441 U.S. 520, 550, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), pointing out the administrative difficulties posed by the necessity of carefully inspecting each book mailed from unidentified sources. Similarly, in the present case, if inmates were allowed to receive

---

**3.** While plaintiff has not provided the materials that were denied to him, choosing instead to have them destroyed, the items plaintiff mentions in his complaint, including copies of paralegal tests and copied excerpts of a book, were likely protected by copyright laws.

photocopies or Internet-generated materials from non-original sources, USDB staff would undoubtedly have to expend much greater personnel resources to screen the material for contraband or copyright violations, thereby increasing the workload on staff.

The USDB Inmate Services Branch houses the institution's mailroom, and USDB staff handled approximately 179,939 pieces of incoming inmate mail in 2003. Currently the mailroom employs a staff of five people to intake, review, categorize, and distribute mail to the inmates. As such, the substantial increase in the volume of regular mail likely to result from allowing such materials, coupled with the unique characteristics of such mail, could drastically undermine the effectiveness of any existing screening procedures and greatly increase the risk of missing dangerous messages. *See In re Collins,* 86 Cal.App.4th 1176, 104 Cal.Rptr.2d 108 (2001) (upholding ban on "Internet-generated material").

Finally, the court examines whether there are ready, easy-to-implement alternatives that would accommodate plaintiff's rights. The Court in *Turner* expressly stated that this is not a "least restrictive alternative" test. *Turner,* 482 U.S. at 90, 107 S.Ct. 2254. Instead, the court should focus on whether "an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 90–91, 107 S.Ct. 2254. Plaintiff has failed to suggest any such alternatives; rather, plaintiff merely proposes that the ban on non-original source material should be lifted in whole. Such an alternative completely ignores the legitimate security concerns that prompted the regulation.

In consideration of the *Turner* factors, the court concludes that USDB Regulation 28–1 does not violate plaintiff's constitutional rights.

### C. *Prison Legal News*

The court next considers whether the denial of *Prison Legal News,* Volume 15, is in violation of plaintiff's constitutional rights. Defendant originally denied access to this publication on the basis that it contained legal cases involving sexual assault. However, upon review, USDB Commandant changed its position and denied plaintiff's appeal on the basis that the publication "encourages or instructs in the commission of criminal activity or institutional violations." Specifically, defendant contends that the publication contained an advertisement encouraging prisoners to trade their unused stamps for currency, which is a violation of USDB institutional regulations.

Upon review of the publication at issue, the court found only one advertisement involving postage stamps. The advertisement states that the GreenBack Exchange is a currency exchange business that buys unused postage at a set percentage of face value. (*Prison Legal News* at 13). Notably, the advertisement does not encourage inmates to send in postage stamps in exchange for currency; rather, the advertisement states: "Send a SASE or (3) 37¢ stamps for details & application" (*Id.*).

The court does not question that a prison regulation banning access to publications that encourage or instruct in the commission of criminal activity or institutional violations is facially valid. However, in the particular circumstances of this case, the court does not believe the advertisement at issue encourages in the commission of an institutional violation because the advertisement does not instruct an inmate to send in postage stamps for currency exchange. Instead, the advertisement instructs an inmate to send a self-addressed stamped envelope, or three postage stamps, to obtain details and an application. While the ultimate receipt by

mail of said "details & application" may encourage or instruct in the commission of an institutional violation (i.e., the exchange of postal stamps for currency), the advertisement at issue does not.

The court believes that the blanket denial of *Prison Legal News* represents an "exaggerated response" to security needs. *Turner,* 482 U.S. at 90, 107 S.Ct. 2254. The court bases this conclusion primarily on the fact that the advertisement encourages or instructs inmates to send for "details & application," which itself is neither criminal activity nor an institutional violation. The court also considers the fact that inmates at USDB can receive magazines such as "Playboy" and "Muscle and Fitness" that advertise hardcore pornography, male enlargement supplements, and other prohibited muscle building supplements. For these reasons, the court grants plaintiff's motion for summary judgment on this issue.

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Doc. 22) is granted in part. The court rules that USDB Regulation 28–1, banning non-original source material, does not violate plaintiff's constitutional rights. Defendant is entitled to judgment as a matter of law.

**IT IS FURTHER ORDERED** that plaintiff's Cross–Motion for Summary Judgment (Doc. 27) is granted in part. The court hereby enjoins defendant from denying plaintiff access to *Prison Legal News,* Volume 15, on the basis that the advertisement concerning postal stamps encourages or instructs in the commission of criminal activity or institutional violations.